Henderson Bridge Company v  O'Connor & McCulloch.

CASE 51—PETITION EQUITY—MARCH 9.

# Henderson Bridge Company v. O'Connor & McCulloch.

### APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. BUILDING CONTRACT CONSTRUED—RIGHT OF ANNULMENT.—December 7, 1881, appellees made a written contract with appellant to construct for it by October 1, 1883, the stone abutments and piers of a bridge. In February, 1884, the company attempted to annul the contract, and April 9, 1884, did take possession and proceed to complete the work, which was in an unfinished state. Appellees seek by this action to recover damages for an alleged breach of contract. The contract provides that " in case the contractors shall not well and truly, from time to time, comply with and perform all the terms herein stipulated, or in case it should appear to the engineer of the Henderson Bridge Company, that the work does not progress with sufficient speed, or in a proper manner, the Henderson Bridge Company shall have the power to annul the contract if it sees ·proper to do so; whereupon the contract on the part of said company shall become null and void, and the unpaid part of the value of the work done shall be forfeited by the contractor to the Bridge Company." *Held*—That under this provision of the contract the appellant had the absolute power, without question by, or previous notice to, the contractors, to annul the contract and take possession of and complete the work whenever it "appeared " to its engineer, or he was satisfied, the work did not progress with sufficient speed or in a proper manner. But time was of the essence of this condition, and as appellant failed within the contract period to exercise its right to annul upon that ground, but accepted and paid for work done under the contract subsequent to October 1, 1883, it must be regarded as having waived the right, which, consequently, was lost.

2. SAME.—The clauses in the original contract, giving power to annul, were not affected by a special agreement entered into in June, 1883, making certain changes in arrangement and plan of foundation, etc., as it was expressly provided therein that the work was to be done in accordance with the original specifications, which contained the clause giving power to annul.

3. SAME.—Although the power of appellant to annul the contract at will was lost by failure to exercise it within the time fixed, the right still existed to terminate it whenever appellees, in fact, failed or refused to

progress with sufficient speed, or in a proper manner, to complete the work within a reasonable time, provided the non-performance or delay was not caused by the fault of appellant contributing substantially to it.

4. SAME.—The contract provides that the masonry "is to be of limestone of such quality as the engineer may approve, it being understood that should the engineer so direct, stone from the white stone quarry at Bowling Green shall be used," and further provides "that no stone will be accepted unless proved to the satisfaction of the engineer that it will withstand, without injury, the influence of water, ice and weather." *Held*—That the court properly instructed the jury that the contractors had no right to require the company to accept the Bowling Green stone.

5. SAME.—The court erred in instructing the jury that "the contractors had the right to have the whole work laid out for them, and to work on all parts of it at once, subject to the right of the engineer to direct the application of force to any portion of the work which, in his judgment, required it," and that if the contractors were denied that right,· any delays resulting therefrom were not grounds of annulment. The instruction was contradictory, and, therefore, misleading.

6. SAME—WAIVER OF STIPULATED DAMAGES—Where an employer has, in any way, waived his right to annul a building contract, his right to stipulated damages for either non-performance or delay by contractors should be regarded as also waived, unless there is an express agreement to the contrary.

In this case the contract provided for the payment to the contractors of 85 per cent. of periodical estimates, the remaining 15 per cent. to be retained by appellant until the completion of the work, and, in the event of a violation of the contract by appellees, the 15 per cent. to be absolutely forfeited by them. *Held*—That appellant having waived its right to annul the contract at will, also waived its right to retain the 15 per cent.

7. SAME.—Besides, as appellant was in default in making estimates and paying for work done after November 30, 1883, it had no right to either annul the contract for non-performance or claim the retained percentage, as its right to annul was given upon the condition and faith it would comply with the stipulations on its part.

8. SAME—MEASURE OF DAMAGES.—The court instructed the jury that the plaintiffs were entitled to recover as one element of damages what they had, at the time they were stopped from work, "fairly, prudently and in good faith, expended upon said work, and in preparation therefor." · *Held*—That this was error, as the evidence shows expenses were incurred in opening quarries that did not furnish suitable stone, procuring materials washed away by floods, and in other ways that proved abortive, for which the company should not

Henderson Bridge Company v. O'Connor & McCulloch.

be made liable, although the expenditures were made " fairly, prudently and in good faith."

9. SAME—This instruction was also wrong, for the reason that appellees were made practically sole judges of their own prudence, fairness and good faith, and, as a result of the error of the court in overruling a motion by appellant to require them to specify the items of damages claimed, appellant was deprived of a fair opportunity to disprove the correctness of their statement of the amount of such expenditures, for the. first time made by them as witnesses on the trial.

10. SAME—ESTIMATES CONCLUSIVE.—The court erred in requiring the jury to go behind and disregard the estimates and payments made and accepted for work done at prices agreed on and fixed.

11. SAME—MEASURE OF DAMAGES.—By one clause of the contract it was provided that, in case appellant annulled the contract and "discontinued the work" at any time, as it was given the right to do by giving the contractors one month's notice, the contractors were to be entitled to payment in full for all the materials delivered and work done at the bridge site or elsewhere, and the company was to be obliged and entitled to take immediate charge of all the contractors' derrick tools, and other working plant, in use at the time on the work included in the contract, and pay for them at a fair valuation. A part of the plant and tools have already been so received and paid for. *Held*—That while the state of case thus provided for did not exist, this provision is to be looked to in determining the relative rights and duties of the parties in case of annulment. Therefore, the damages to appellees resulting from the act of appellant, if found to have been illegal, should be regarded as consisting of—first, the value of such of their derrick tools and other plant as were in use at the time; second, the value of the materials then on hand or delivered, or ready for delivery, subsequent to November 30, 1883; third, the reasonable value of unestimated work done after that date; fourth, the amount of 15 per cent. of earnings retained, the last two items to be paid for in any event; fifth, interest on the whole amount from April 9, 1884, except that interest on the amount of 15 per cent. of earnings reserved should be given from November 30, 1883, and interest on value of work done and materials furnished from the respective dates on which, under the contract, estimates and payments therefor ought to have been made; sixth, whatever profits it may be shown could have been made if appellees had been permitted to complete the work.

12. SAME.—Where the parties to such a contract as this have themselves agreed upon a basis of settlement and judgment for the injury sustained, neither has a right to complain if that basis is adopted by the court.

**WM. LINDSAY FOR APPELLANT.**

1. The question of the right of the contractors to use Bowling Green stone, should have been determined upon the contract as written, and therefore, the evidence relating to that question was incompetent, and while the question was withdrawn from the jury by the instructions, the incompetent testimony was left to have its full weight in exciting the prejudice and warping the judgment of the jurors.

2. Testimony as to delays and defaults prior to the contract of June, 1883, was incompetent, and the instruction telling the jury that the making of that contract was a waiver of such delays and defaults, did not cure the error in admitting the incompetent testimony.

3. The court erred in admitting testimony upon matters as to which the engineer's decision was final and conclusive; and also in admitting testimony as to floods and casualties, as to which the contractors took the risk.

4. When improper and irrelevant evidence goes to the jury, it is a question of law for the court to decide what portion of it is to be withdrawn, and the court must define specifically the part of the evidence to be excluded. The court can not cure the error in the admission of the evidence by merely instructing against its effect. (Baker v. Crow, 7 Bush, 202; Flint v. Commonwealth, 81 Ky., 186; Scipps v. Reilly, 35 Mich., 371.)

5. The court should have modified the instruction as to measure of damages by telling the jury, as asked by defendant, that they could, in no event, allow the plaintiffs, in the way of damages, any expenditures they may have made, which did not in fact, or could not reasonably have been made to, promote the execution of the work covered by the contract, however prudent and judicious it may have appeared at the time it was made. Such a modification was rendered the more important by reason of the fact that there was no itemized account of expenditures.

6. This action was upon the contract, and the plaintiffs, to the extent of the work done, are limited to the contract prices, and to such damage as they may have sustained by not being allowed to finish the work, or for any other loss occasioned by the failure of the defendant to perform its contract. (Western v. Sharp, 14 B. M., 144; Doolittle & Chamberlain v. McCollough, 12 Ohio St., 360.)

    This is the Kentucky rule, and any dicta in the Behan case in conflict with it must be rejected by the courts of this State.

7. The damages to be recovered must always be the *natural and proximate consequence* of the act complained of. (Hadley v. Baxendale, 9 Excheqr., 341; Woods' Mayne on Damages, secs. 14 and 45; E. & P. R. R. Co. v. Pottinger, 10 Bush, 188; Smith v. W. U. Telegraph Co., 7 Ky. Law Rep., 29; 2 Greenleaf on Evidence, 13th ed., sec.

256; 1 Allison on Contracts, sec. 488; 1 Sutherland on Damages, pp. 17, 18, 19.)

8. The estimates are conclusive as to the value of the work estimated, (Sutherland on Damages, vol. 2, page 521.)

9. The court erred in authorizing the jury to give interest upon unliquidated damages. The Kentucky rule is that interest can only be allowed where there has been a use by the defendant of money or property which was due to or owned by the plaintiff. (Murray v. Ware's ex'r, 1 Bibb, 326-7; Neel v. Keo's ex'r, 4 Mon., 164; Cartmill v. Brown, 1 Mar., 578; Harris v. Ogg, 1 J. J. Mar., 412; McMurtry v. Ky. Cent. R. R. Co., 8 Ky. Law Rep., 455; Rev. Stats., chapter 53, sec. 6; Gen. Stats., chap. 60, sec. 6; White v. Miller, 34 Am. Rep., 544; Lewis v. Rountree, 79 N. C., 122; Deveraux v. Benjamin, 11 Ired., 490; Tobacco Asso. v. Ashley, MS. Op., Superior Court, Oct. 14, 1885; Comyn on Contracts, chap. 8; Addison on Contracts, vol. 1, sec. 487; Jacobs-Fisher's Digest, vol. 5, page 7, 822, 838; 4 Bibb, 542; 1 J. J. Mar., 412; 5 Dana, 140; 3 Mon., 369; 6 Dana, 1; Hardin, 118; 3 J. J. Mar., 41; 6 J. J. Mar., 320; 7 Mon., 213; 1 Dana, 400; 14 Bush, 607; 14 Bush, 667; Ormsby & Castleman v. Johnson, 1 B. Mon., 80; White v. Miller, 71 N. Y., 118; 1 Sutherland on Damages, p. 610.)

## HELM & BRUCE ON SAME SIDE.

1. It was intended by the parties in their agreement to make the annulment conclusive without regard to the ground upon which it was made. Where the decision of an officer is manifestly intended to be considered as final, it will be so treated and enforced by a court, even though it may not be expressly declared to be final, especially when it is made the basis or condition precedent to some final action by one of the parties. (Kihlberg v. United States, 97 U. S., 398; Sweeney v. United States, 109 U. S., 618; Mercer v. Harris, 4 Neb., 82; Korf v. Sull, 70 Ill., 422; McAuley v. Carter, 22 Ill., 57; Faunce v. Burke, 16 Pa. St., 469.)

The cases of Cincinnati S. Ry. Co. v. Cummings, MS. Op., and Memphis, &c, R. Co v. Wilcox, 48 Pa. St., 12; Stephenson v. B. F. & M. Ins. Co., 54 Me., 69, commented on.

2. If two interpretations can be given to a contract, one of which avoids it. and the other sustains it, the courts will always give that interpretation which will uphold the contract. (Wharton on Contracts, vol. 1, sec. 337, and vol. 2, sec. 655; Bruce v. Holbert, 3 Mon., 65.)

3. All contracts should be interpreted with a view to the intention of the parties, and the language which is used should receive a common sense interpretation. (Hildreth v. Forrest, 4 J. J. Mar., 219; Hunter's adm'r v. Miller's ex'r, 6 B. M., 619; Shultz v. Johnson, 5 B. M., 499; Meriwether v. Lewis, 9 B. M., 168.)

Henderson Bridge Company v. O'Connor & McCulloch.

4. A contract to perform work to the *satisfaction* of the employer is enforceable. (Stadhard v. Lee, 3 Best & Smith, 364; Brown v. Foster, 113 Mass., 136; Zaleski v. Clark, 44 Conn., 218; Cline v. Libby, 46 Wis., 123; Tyler v. Ames, 6 Lans. (N. Y.), 280; Gibson v. Crannage, 39, Mich., 49.)

5. There was no necessity for notice to the contractors that the company or the engineer was going to consider the question of whether or not they were satisfied in the matters left to them. This was not a case of arbitrament. (Collins v. Collins, 26 Beavan, 306; Curry v. Lacky, 35 Mo., 389; Garred v. Doniphan, 10 Mo., 164; Scott v. Corporation of Liverpool, 60 Eng. Ch'y, 334; Waite's Actions and Defenses, vol. 6, p. 506; Rapalje & Laurence's Law Dictionary, vol. 1, p. 75; Burrill's Law Dictionary, vol. 1, p. 86; Bacon's Abridgment, vol. 1, p. 201; Comyn's Digest, vol. 1, p. 234; Korf v. Sull, 70 Ill., 420, 424; Norton v. Gale, 95 Ill., 533; California, &c., Church v. Sitz, 15 Pac. Rep., 841; Green v. Moore, 64 Pa. St., 90; Palmer v. Clark, 106 Mass., 389; Brink v. Ins. Co., 5 Rob. (N. Y.), 123.

    Even in admitted cases of arbitration the rule of requiring notice is not without exception. (Morse on Arbitration and Award, p. 143; Eads v. Williams, 31 Eng. L. & E., 207; Tittenson v. Peat, 3 Atkyns, 329, 330; Miller v. Kennedy, 3 Rand., 6.)

    Cases commented on: M. W. P. & L. Turnpike Co. v. Waters, 6 Dana, 62; McMahon v. N. Y. & E. R. Co., 20 N. Y., 462; Collins v. Vanderbilt, 8 Bosw., 313; Wilson v. York & M. L. R. Co., 11 Gill & Johns. (Md.), 74; Herrick v. Belknap and Vermont Cent. R. Co., 27 Vt., 673.

6. The fact that the engineer was interested, being a stockholder in the defendant company, did not deprive him of the right to decide the questions referred to him by the contract. (Ranger v. N. W. Railway Co., 5 House of Lords Cases, 72.)

7. Even if it was the duty of the engineer to give the contractors notice, it is too late, after the engineer's report has been made, and the company has taken final action, to impeach that action, by showing that the engineer had failed to do something he ought to have done before making the report, unless it be also shown that the Bridge Company, before taking final action, knew of the omission of the engineer.

8. The failure to annul before the first day of October, 1883, was not a waiver of the right to do so on the ground that it appeared to the engineer that the work was not progressing with sufficient speed. That ground of annulment has reference *exclusively* to the *rate* of progress, and that *rate* is just as easily ascertainable after the expiration of the contract period as before. (E. & P. Railroad Co. v. Geoghegan, 9 Bush, 56.)

    Cases commented on: Walker v. London & Northwestern R. R. Co., L. R., 1, C. P. D.; Clark v. Smith, 1 DeGex, J. & S., 409.

Henderson Bridge Company v. O'Connor & McCulloch.

9. The appellant still had the right to annul on the report of the engineer after the contract limit had passed because the right to do so was preserved *by a special agreement.*

10. Errors of the court in admitting testimony were not cured by the instructions. (Flint v. Commonwealth, 81 Ky., 186; Becker, &c., v. Crow, &c., 7 Bush, 198; Coppage v. Commonwealth, 3 Bush, 533; Kennedy v. Commonwealth, 14 Bush, 361.)

11. The contract did not give plaintiffs the right to use Bowling Green stone, and, therefore, the position taken by them in regard to the use of that stone was a practical refusal by them to execute the work under the contract, and, therefore, they have no right to maintain this action on the contract, and the court should have given a peremptory instruction to find for defendant.

12. There can be no recovery for unestimated work, because the plaintiffs' pleadings are not sufficient to support a judgment for any amount on that account.

13. The court erred in submitting to the jury, by its instructions, the question as to the reasonableness of the time of annulment, as the uncontradicted evidence removes that question.

The case of Randel, Jun. v. Chesapeake & Delaware Canal Co., 1 Har., 233, commented on.

The court also erred in instructing the jury that " the contractors had the right to have the whole work laid out for them, and to work on all parts of it at once," etc., as the instruction is contradictory and misleading, is purely abstract, and places a construction upon the contract different from that placed upon it, by the parties.

14. The court erred in its instructions as to measure of damages. Where the contractor has, without his fault, been prevented by the employer from completing the work, he is limited to contract prices for the work done, and to such sum as he may show, with reasonable certainty, he could have made by way of profits. (Weston v. Sharp, 14 B. M., 144; Doolittle & Chamberlain v. McCullough, 12 Ohio St., 360; Alder, &c., v. Keightley, 15 M. & W., 177.)

And as a contractor can not recover more than the contract rate by showing that the work, economically done, actually cost more, he certainly can not recover expenditures which in no way tended to promote the work.

No damage ought to be allowed for a breach of contract except such as can be directly traced to the breach of the contract and which was within the contemplation of the parties at the time the contract was made. (Addison on Contracts, sec. 488; Sutherland on Damages, vol. 1, p. 74; Greenleaf on Evidence, vol. 2, sec. 256; Hadley v. Baxendale, 9 Excheqr., 341; E. & P. R. Co. v. Pottinger, 10 Bush, 188.)

Cases commented on: Behan v. United States, 110 U. S., 388; Kenyon Bank-note case, 79 Va.)

14. The court erred in allowing the jury to find interest. (Smith v. Leary, Hardin, 518; Murray v. Ware's Adm'r, 1 Bibb, 325; Cartmill v. Brown, 1 Mar., 576; Neal v. Keel's Ex's, 4 Mon., 163; Harris v. Ogg, 1 J. J. Mar., 412; Ormsby & Castleman v. Johnson, 1 B. Mon., 80; Lewis v. Rountree, 79 N. C., 122; White v. Miller, 71 N. Y., 118; s. c., 78 N. Y., 394.)

Cases commented on: Jackson v. Holliday, 1 B. M., 80; Patrick v. Clay, 4 Bibb, 246; Brown v. McClellan, 1 Mar. 43; Handy v. Chambers, 1 Litt., 358; Morford v. Ambrose, 3 J. J. Mar., 690; Whittemore v. Stout., 7 Dana, 236; Taylor v. Knox, 1 Dana, 391; Field v. Burnam, 3 Bush, 518; Adams' Express Co. v. Milton, 11 Bush, 50.

H. W. BRUCE of counsel on same side.

BROWN, HUMPHREY & DAVIE for appellees.

1. The clause of the contract which authorized the company to annul the contract and forfeit the contractors' property, in case it should appear to the Company's engineer that the work "did not progress with sufficient speed or in a proper manner," meant a manner of progress sufficient to insure the completion of the work by the contract time, October 1, 1883, and "proper manner" had relation only to the rate of progress and time of completion, and not to the quality of the work. (Walker v. London & N. W. R. R., Law Reports, 1 Common Pleas Division, 518.)

2. As that clause was only intended to give the engineer such power as would enable him to insure the completion of the work within the contract time, the company could not declare a valid annulment and forfeiture unless it did so before the expiration of the contract time for completion. The failure of the company to annul before that time was an expiration and waiver forever of all right to annul and forfeit under that clause. (Walker v. London, &c., R. R., Law Reports, 1 Com. Pl. Div., 518; Clark v. Leech, 1 DeGex, J. & S., 409; Grant v, Savannah R. R., 51 Ga., 348; Rorer on Railroads, 463; Phillips v. Seymour, 91 U. S., 651; Gallagher v. Nichols, 60 N. Y., 448; Bellamy v. Ragsdale, 14 B. M., 365; E. & P. R. R. v. Geohegan, 9 Bush, 56.)

3. The annulment under that clause was void also upon the ground that the contractors were not given notice and opportunity to be heard by the engineer or board of directors of the company before the forfeiture. The law implies that the contractors shall have an opportunity to appear and state their side to the arbitrator, with such explanations as might have a beneficial tendency to guide his judgment to a fair and just result. (Rorer on Railroads, 464; Waters v. Turnpike, 6 Dana, 69; Wood on Railroads, 999; McMahon v. Erie R. R., 20 N.Y., 463; Wilson v. Maryland R. R., 11 Gill & Johns., 74;

Henderson Bridge Company v. O'Connor & McCulloch.

Dormey v. Knowder, 55 Iowa, 722; Curtis v. Sacramento, 64 Cal., 102; Day v. Hammond, 57 N. Y.; Thomas v. Western R. R., 25; N. J. Eq., 568; Dickson v. R. R., 7 W. Va., 390.)

4. Even if the company had the right to annul under that clause after the expiration of the contract time of completion, the annulment would be void if the failure of the contractors to progress with sufficient speed or in a proper manner was occasioned in part or wholly by obstructions or other fault of the company or its agents; and the decision as to whose fault, in whole or in part, caused the failure to so progress is not left to the engineer or the company, but is to be decided by the courts. (Walker v. London R. R., Law Reports, 1 Com. Pleas Div., 518; Roberts v. Bury, Commissioner, Law Reports, 5 Com. Pleas Cases, 310.)

5. The company's engineer and directors were biased in favor of the company, and were not impartial, and hence their judgment of forfeiture was void. (Waters v. Turnpike Co., 6 Dana, 68; County v. Herms, 108 Ill., 162.)

6. The engineer and directors of the company were not given the power under that clause, or elsewhere, to conclusively determine the duties and rights of the contractors; and their construction as to the legal effect of the contract is not binding on the contractors; and, as their action was occasioned by a wholly erroneous and mistaken view of the respective rights and duties of the parties, their judgment of annulment and forfeiture was void. (Galveston R. R. v. Henry, 65 Texas, 691; McElroy v. Knott, 13 Ill., 147; Alton R. R. v. Northcott, 15 Ill., 49; Lloyd's Law of Building, 29; 17 Ohio, 385.)

7. The said clause does not in express terms make the declaration of the engineer or the judgment of the directors conclusive; and in the absence of such express provision the court will construe it to be *prima facie* only, and subject to be overthrown by evidence of error. (Memphis R. R. v. Wilcox, 48 Pa. St., 161; Abbott's Trial Evidence, 371; Glaucas v. Black, 50 N. Y., 151; Shearman v. Mayor, 1 Comstock, 316; Bigler v. Mayor, 16 N. Y. Supreme Ct., 259; Sloan v. Haydon, 110 Mass., 143; Cin. R. R. v. Cummings, 6 Ky. Law Reporter, 441.)

8. If that clause be construed as conclusive, so as to oust the courts of jurisdiction, and to leave the rights of the one party to be finally decided by the other party, it would be repugnant to the life of the contract, against public policy, and void. (Stevenson v. Piscatawa Ins. Co., 54 Maine, 69; President Canal Co. v. Coal Co., 50 N. Y., 266; Dines v. Grand Junction, 3 House of Lords Cases, 759; 105 Mass., 219; Ranger v. Great Western, 22 Eng. L. & Eq., 35; Scott v. Corporation, 3 DeGex & Jones, 334; 1 Redfield on Railways, 454; Kistner v. Indianapolis R. R., 88 Ind., 460; Dugan v. Thomas, 76

Me., 221; Chamberlain v. Connecticut R. R., 54 Conn., 472; Starkey v. DeGoff, 22 Minn., 431; Smith v. R. R., 36 N. H., 458.)

9. The attempted annulment under that clause for failure to so progress as to complete in the contract time was void, also because of the radical changes in the nature of the work, in converting it from a "draw" to a "through" bridge. The contractors never agreed to build the more extensive and difficult bridge within the same time as the original bridge; and no annulment and forfeiture could be imposed for failing to progress with such speed as to do so. (Thornhill v. Neats, 98 Eng. Com. Law R., 845; Lloyd on Building 64, 101; Doyl v. Halpin, 1 Jones & Spencer, 365; Green v. Haines, 1 Hilton, 254; Smith v. Gugerty, 4 Barbour, 621; Manf'g Co. v. U. S., 17 Wall., 592; U. S. v. Mueller, 113 U. S., 156; Waring v. Manchester, 2 Hall & Twell, 239; Cook County v. Harmes, 108 Ill., 157.)

10. The radical change of the plans from the bridge originally contracted for; the making of the new contract for the different bridge in June, 1883; the company's obstructions and delays for Congressional action, for pecuniary reasons, and for other purposes; the failure of the company to declare an annulment before the original completion time; the action of the company in allowing or inducing the contractors to continue their labor and expense upon the company's bridge after the contract time of completion had passed, constituted an irrevocable waiver of the time clause of the contract, and of all right to annul or forfeit because of anything that had theretofore occurred; and the only obligation upon the contractors thereafter was to make reasonable efforts to complete the work in a reasonable time. (Walker v. London, R. R., Law Reports, 1 Com. Pleas Div., 518; Lockhart v. Ogden, 30 Cal., 548; Ex. Parte Newitt, Law Reports, 16 Chancery Division, 522; Marsden v. Sambell, 43 Law Times Rep., 120; Eyster v. Parrott, 83 Ill., 517; Grant v. Savannah R. R., 51 Ga., 348; Commissioners v. Rhodes, 26 Ohio St., 410; Doyle v. Halpin, 1 Jones & Spencer, 365; and cases cited ante.)

11. In determining whether the contractors were well and truly complying with and performing the stipulations of the contract, or progressing with sufficient speed and in a proper manner to complete the work in a reasonable time, allowance is to be made for the obstructions, hazards and accidents, expected and unexpected, which the contractors had gone through or might be reasonably expected to encounter, and for all difficulties and necessary delays, whether known to the parties in advance, or which the unknown future might develop. They were entitled to "so much time as would be necessary under the circumstances to do conveniently what the contract required to be done." (Blackwell v. Foster, 2 Met., Ky., 89; Commissioners v. Rhodes, 26 Ohio St., 410; Goodall v. Streeter, 16 N. H., 97.)

12. When the new agreement of June, 1883, for the new plan of bridge was entered into, there was no contract made that the work, or any particular portions of it, should be completed by any fixed dates, nor that there should be any right of annulment and forfeiture if they were not completed by such dates. The work was left to be completed in a reasonable time, the parties being hopeful and anxious to finish it by the early part of 1885, if it could reasonably be done. (Minneapolis Gas Co. v. Kirr, 122 U. S., 303.)

13. That clause of the original contract which allowed the company to annul and forfeit upon the declaration of its engineer that the work did not progress with the speed or in a manner sufficient to complete the work within the contract time was only agreed to with reference to that original time, and ceased to exist when that time clause was waived. It was never agreed that that clause should continue and be applicable to the new contract of June, 1883, under which the work was only to be completed in a reasonable time, and no forfeiture could be imposed, after the original contract time expired, on the ground that the work did not then progress with a speed or in a manner sufficient to complete the bridge in a reasonable time. (Walker v. London R. R., Law Reports, 1 Com. Pleas Div., 518; Doyle v. Halpin, 1 Jones & Spencer, 366.)

14. The other clause, which provided that the contract might be annulled, and the contractors' property forfeited by the company in case the contractors "should not well and truly, from time to time, comply with and perform the terms of the contract," did not make the company or its engineer the judge as to such compliance or performance, but left it for the courts to decide. (Walker v. London R. R., L. R., 1 Com. Pleas Div., 518; Roberts v. Bury Commissioners, L. R., 5 Com. Pl. Cases, 310.)

15. No annulment or forfeiture could be made under that clause, if the failure of the contractors to well and truly, from time to time, comply with and perform the terms of the contract was occasioned, or was in part contributed to, by the fault of the company itself or its agents or employes. (Roberts v. Bury Commissioners, Law Reports, 5 Com Pleas Cases, 310; Weeks v. Little, 89 New York, 569; Holmes v. Guppy, 3 Mees & Welsby, 386; Doyle v. Halpin, 1 Jones & Spencer, 353; Russell v. Debaudiere, 106 Eng. Com. Law. Law R., 203; Howard v. Wilmington R. R., 1 Gill, 312; McAndrews v. Tibbatts, 39 N. J., Law, 109; E. & P. R. R. v. Pottinger, 10 Bush, 186; Waring v. Manchester R. R., 2 Hall & Twell, 239; U. S. v. Peck, 102 U. S., 64; Lon. R. R. v. Donnegan, 111 Ind., 179; Harvey v. U. S., 8 Court of Claims, 501; Smith v. Gugerty, 4 Barbour, 615; Blanchard v. Blackstone, 102 Mass., 347.)

16. The failure of the company, after November, 1883, to make out and pay to the contractors the monthly estimates which the contract

required was a radical breach and repudiation of the contract by the company, and while such failure continued the contractors were not bound to do any further work, and the company was thereby and thereafter precluded from annulling or forfeiting for want of progress or speed, or compliance or performance by the contractors. (Fauts v. Burk, 16 Pa. St., 469; Canal Co. v. Gordon, 6 Wall., 561; Howard v. Del. Canal, 1 Gill, 343; Phillips v. Seymour, 91 U. S., 649; E. & P. R. R. v. Pottinger, 10 Bush, 186; Randall v. Chesapeake Canal, 1 Harrington, 271; Hale v. Front, 35 Cal., 24; Springton Turnpike v. Riley, 8 Ky. Law Reporter, 267; Grand Rapids R. R. v. Van Dusen, 29 Mich., 444.)

17. The provision of the contract that in the event of such annulment the unpaid part of the value of the work done shall be forfeited to the company was only applicable to the reserved fifteen per cent., and did not apply to the eighty-five per cent. of work done after November, 1883, and which the company had refused to estimate, and withheld in violation of the contract. (E. & P. R. R. v. Geohegan, 9 Bush, 57; Geiger v. Western R. R., 41 Md., 5; Ricker v. Fairbanks, 40 Maine, 43; Pluta R. R. v. Howard, 13 Howard, 340.)

18. The radical changes in the plans of the work, the making of the new contract, the waiver of the time clause of the original contract, the waiver of the rights of annulment and forfeiture for failure to complete in the original time, and the company's violation of the contract by refusing to make or pay estimates, put an end to any right of the company to claim, either as a forfeiture or as liquidated damages, the reserved fifteen per cent. of the contractors' money. (E. & P. R. R. v. Pottinger, 10 Bush, 186; 1 Howard v. Delaware Canal Co., 1 Gill, 342; Roberts v. Bury Commissioners, L. R., 5 Com. Pl. Cases, 310; Waring v. Manchester R. R., 2 Hall & Twell, 239.)

19. Any right that the company had to annul and forfeit because of an engineer's report that the work did not progress with sufficient speed, or in a proper manner to complete it within the original contract time, or within a reasonable time, and any right which the company had to forfeit because the contractors failed at any time to well and truly comply with and perform the terms of the contract, had to be declared and exercised promptly within a reasonable time after the company or its agents learned of such failure to perform or comply. If the company permitted the contractors to continue to invest their labor and money, and to increase the fifteen per cent. reserve for forfeiture, it thereby waived its right to annul and forfeit. (Randall v. Chesapeake Canal, 1 Harrington, 153, 276, 310; Marsden v. Sambell, 43 Law Times R., 120; Gallagher v. Nicolls, 60 New York, 448.)

20. The provisions of the contract placing the work in the hands of the contractors to be completed in a fixed time, providing for it to proceed from both shores at once, directing the company's engineer to

lay out the work for the contractors, and empowering the engineer to direct the application of force to any portion of the work, and to order the increase or diminution of force at any point, implied that the contractors should not be unreasonably restricted or retarded in the performance of it; and the company's engineer had no right to refuse to permit work on the shore piers, nor to compel work on the river piers at unreasonable times, nor to arrest the shore work or other work under color of diminishing force at a particular point. nor to prevent the entire force the contractors had or desired from being employed somewhere all the time. (Warner v. Wilson, 4 Cal., 310; Mansfield v. N. Y. R. R., 102 N. Y., 213; Clark v. Mayor, 3 Barbour, 291; 4 Comstock 339; Dubois v. Del. Canal, 4 Wendell, 285; Cook County v. Hermes, 108 Ill., 157; Hunt v. Pa. R. R., 51 Pa. St., 475; 2 Woods' Railway Law, 1009, 1111, 4 Selden, 222; Weeks v. Little, 89 N. Y., 569; Blanchard v. Stone, 102 Mass., 347; Lon. R. R. v. Donnegan, 111 Ind., 187; E. & P. R. R. v. Pottinger, 10 Bush, 186; Blanchard v. Blackstone, 102 Mass., 347; Harvey v. U. S., 8 Court of Claims, 501.)

21. The contractors did not at any time refuse to go on with the work unless allowed to use the Bowling Green stone, nor did they refuse to go on with the work unless they were paid the difference between the cost of the stone exacted and Bowling Green stone, nor did they ever abandon the work. The negotiation for an increase in the price of stone was made by the contractors as a return proposition in answer to a proposition from the Company in January, 1884, to make a new contract by which the contractors' right to take a reasonable time to complete the work was to be surrendered, and they were to agree to complete each specified pier in a certain order and at a certain date. That counter-proposition of the contractors was neither a breach of the contract nor an abandonment of it. (Murray v. Harway, 56 N. Y., 347; Robinson v. Paige, 3 Russell, 114; Hawkins v. U. S., 96 U. S., 697; Wheeler v. New Brunswick R. R., 115 U. S., 37; Dingley v. Oler, 117 U. S., 490; Freeth v. Burr, Law Reports, 9 Com. Pleas, 213.)

22. Even if the contractors had said that they expected on the final settlement to assert a claim to be paid an extra allowance for the more expensive stone (which they did not do except as a part of the said counter-proposition), it would not have prejudiced their right or justify an annulment. (Hawkins v. U. S., 96 U. S., 697; Murray v. Harway, 56 N. Y., 347.)

23. At the time that counter-negotiation for an increase in the price of stone was made, the company was in default in various ways, and had broken the contract by failing to make or pay monthly estimates; and the contractors had the right to negotiate with the company for new terms, and the company was in no position to annul or

forfeit. (Howard v. Del. Co., 1 Gill, 343; E. & P. R. R. v. Pottinger, 10 Bush, 186; Faunts v. Burk, 16 Pa. St., 469.)

24. When the new contract was made in June, 1883, for the different "through" bridge, it was left open for arbitration how much the contract price per cubic yard for the masonry should be increased by reason of the said change. The company having violated the contract, and rendered the carrying out of that arbitration contract impracticable, the additional price to be added to the stone was proper to be settled in this suit. (Humaston v. American Tel. Co., 20 Wallace, 20.)

25. The proper measure of damages in a case like this is that the contractor who has been wrongfully stopped from completing the work, and thereby getting back his money invested and getting his profits, is entitled to recover the net amount he has prudently, fairly and in good faith invested in the work, so as to be made whole; and, in addition, the net profits which it can be shown with reasonable certainty that he would have made had he been permitted to complete the work. The company is estopped to deny his right to recover his expenditures, whether he would have made profits or not. (United States v. Behan, 110 U. S., 338; Sutherland on Damages, 131, 132; Kendall v. Commissioners, 79 Va., 563; E. & P. R. R. v. Pottinger, 10 Bush, 186; Sanger v. Chicago, 63 Ill., 506. Bulkley v. U. S., 7 Ct. Claims, 543; Kelly Bridge Co. v. U. S., 15 Court Claims, 206; Brent v. Parker, 1 Southern Reporter, 783; Phillips v. Seymour, 91 U. S., 646; High v. U. S., 8 Court of Claims, 319; Jones v. U. S., 1 Court Claims, 266; Addison on Contracts, 881; Hambly v. Del. R. R., 21 Fed. Reporter, 546.)

26. The contractors were entitled to interest upon the amount of their expenditures from the date of the company's violation of the contract. Interest is due *eo nomine*, or as a measure of damage for the wrongful failure to pay. (Henderson Cotton Co. v. Lowell Machine Shops, 86 Ky., 668; Com. v. Collins, 12 Bush, 387; Adams Ex. Co. v. Milton, 11 Bush, 50; Field v. Burnam, 3 Bush, 519; Whitmore v. Stout, 7 Dana, 240; Morford v. Ambrose, 3 J. J. Mar., 692; Kendall v. Commissioners, 79 Va., 563; Fraser v. Bigelow, 141 Mass., 128; Del. R. R. v. Barsom, 61 Pa. St., 381; Dyer v. National Co., 118 U. S., 507; Van Rensaeller v. Jewett, 2 Selden, 135; Dana v. Fielder, 12 N. Y., 40.)

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

December 7, 1881, O'Conner & McDonald made a written contract with the Henderson Bridge Company to construct for it, by October 1, 1883, the stone abutments and piers of a bridge across the Ohio river at Henderson, Kentucky.

June —, 1883, with consent of the company, Mc-
Donald retired, and McCulloch took his place as mem-
ber of the firm and party to the contract.

February 14, 1884, the company attempted to annul
the contract, and did, April 9, 1884, take possession,
and proceed to complete the work, which was in an
unfinished state.

This action was instituted August 1, 1884, by O'Con-
ner & McCulloch, to recover of the company damages
for an alleged breach of contract, and after a jury trial,
lasting from November 3, to December 24, 1886, a
verdict was found in favor of plaintiffs for eighty-six
thousand eight hundred and five dollars and seventy-
three cents, with interest thereon from April 9, 1884,
making the sum of one hundred and one thousand
eight hundred and thirty-seven dollars and fifty-eight
cents, for which the judgment appealed from was
rendered.

In their petition appellees allege that soon after the
contract was made O'Conner & McDonald procured the
necessary plant and materials, and following direc-
tions of appellant's engineer as to the order of doing it,
performed a large and valuable portion of the work
during the year 1882, and up to June, 1883, but that
appellant, almost from the beginning, commenced and
continued in the following manner to hinder and delay
them in carrying it on, as provided in the contract:

1. That having determined to so change the origi-
nal plan as to make a through instead of draw-bridge,
necessitating a change in the size and location of nearly
every pier, appellant commenced in the spring of 1882
to obstruct progress of the work in order to avoid

locating the foundations until an act of Congress could be passed authorizing such change, which was not done until 1883, whereby the contractors were prevented pushing the work at most available places, and using men and materials to advantage.

2. That although the work was bid for and undertaken with the understanding the contractors would not be required to use stone of better quality or more expensive than such as could be gotten at Hopkinsville and Bowling Green quarries, appellant, before the working season of 1882 began, notified them the Hopkinsville stone would not do, and refused to permit the Bowling Green stone used except for a small portion of the work.

3. That appellant from the beginning refused to furnish plans for shore work, although the contractors had from the spring of 1882 large amounts of material ready for, and requested permission to do, such work.

4. That great expense, labor and delay were caused by the manner, not contemplated, in which the contractors were required to construct caissons, and by negligence and mistake of appellant in other ways specially set out in the petition.

It is further stated that, in the spring of 1883, appellant notified the contractors it had altered the plan of the bridge so as to conform to the act of Congress just passed, and pending negotiations about prices for work to be done according to the new plan, McDonald transferred his rights and interests to McCulloch, and a special contract in writing was, June, 1883, made between appellant and O'Connor & McCulloch for building the foundations and piers according to the specifica-

tions of the original contract and the general profile of the modified plan, made part of the new contract, at prices specified and then agreed on, and which are stated in the petition. That, by reason of delays the contractors had been previously subjected to, and the radical change in the plan of the bridge, it was impossible to complete the work by October 1, 1883, and the purpose and expectation of it being done was waived by all parties at the time of the June contract, and appellant waived the provision of the original contract requiring it, and agreed said work might and could be done within a reasonable time.

It is further stated that the new firm at once proceeded to work under the original and special contract, though the latter was never signed by either party, obtained large amount of additional material, increased the number of men, and in all respects, to the extent allowed by appellant, carried on the work as rapidly as practicable, and more so than usual for such work to be done, but that appellant still refused to lay out or permit them to do shore work or to use Bowling Green stone, and although they continued to work until April 9, 1884, appellant wrongfully refused to make or cause made any estimate, or to pay them any part of what was due for work done during the months of December, 1883, January, February, March and April, 1884.

They further state that, while in peaceful possession of the work under the contracts, ready and able to complete it as rapidly as they had undertaken to do, appellant wrongfully and unlawfully, with a large number of men, and by force and violence, took possession, and drove them from said work, at the same time cutting

down and injuring their buildings and machinery. They had, in order to do said work, purchased and constructed, at great expense and labor, a large and peculiar plant, a considerable portion of which was unfit for any other purpose, and expended much time and means in hunting for and operating quarries, making other preparations necessary for the work, and had on hand, in good condition, a great part of the materials therefor, but that, by reason of said breach of contract and expulsion from the work, their plant, equipment and preparations became of much less value, and they lost a large part of what was so invested. That if they had been allowed to complete said work, they could and would have made large profits that were lost by said act of appellant. That the reserve of fifteen per cent. on the estimates up to November 30, 1883, amounting to thirty-three thousand seven hundred and sixty dollars and thirty-four cents, and also the amount due for work subsequently done, have been withheld, and that the whole loss and damage sustained, after deducting what has been paid to them by appellant, amounts to two hundred and sixty thousand dollars, for which they pray judgment.

We have referred in detail to the various grievances complained of in the petition, as well as to the elements of damages claimed because, in respect to each, a question of law or fact was made and passed on in the lower court; but, before answering, appellant moved the court to strike out certain portions of the petition because irrelevant, which was sustained in part only, and also moved that appellees be required to specify the items of damages, which was overruled, and whether,

and to what extent, the rulings of the lower court on these motions were erroneous will be hereafter considered directly or incidentally.

In paragraph 3 of the answer it is, in substance, alleged that appellees did not well and truly, from time to time, comply with the terms stipulated in the contract of December 7, 1881, and for a long time before February 14, 1884, and up to that day, it *appeared* to the engineer of appellant that the work agreed to be done in said contract did not progress with sufficient speed, or in a proper manner, and on that day said engineer addressed a communication to the president of appellant as follows: "I have heretofore notified you orally on several occasions, I now notify you in writing, that the contractors, M. J. O'Connor and H. P. McDonald, and J. G. McCulloch, assignee of H. P. McDonald, have not well and truly, from time to time, complied with and performed all the terms stipulated in the contract between them and the Henderson Bridge Company, and that it clearly appears to me that the work under said contract does not progress with sufficient speed or in a proper manner."

That said communication having been laid before, it was resolved by the board of directors of appellant the said contract be annulled, and notice thereof be given by the president, and that thereby said contract did become null and void, the unpaid part of the value of work forfeited to appellant, and it had thereafter the right to employ another person to complete the work. That appellees were notified of the action of appellant annulling said contract, and it is a bar to the action.

Whether the demurrer was properly sustained to that paragraph of the answer depends upon the construction of that part of the contract relating to the power of appellant to annul the contract, which is as follows :

"If for any reason whatever, deemed sufficient to them, the Henderson Bridge Company, through their president and board of directors, shall think fit to do so, they shall have the privilege, by giving the contractors one month's notice to that effect, to annul the contract and discontinue the work, or continue it in such manner as they may choose. In that case the contractor will be entitled to payment in full for all the material delivered and work done at bridge site or elsewhere, and the Henderson Bridge Company shall be obliged and entitled to take immediate charge of all the contractor's derrick tools or other working plant in use at the time on the work included in the contract, and shall pay for them at a fair valuation, based on their actual value at the time. In order to ascertain such value, each of the parties shall select one man to represent them as an arbitrator, whose decision shall be final.

"In case the contractors shall not well and truly, from time to time, comply with and perform all the terms herein stipulated, or in case it should *appear* to the engineer of the Henderson Bridge Company that the work does not progress with sufficient speed, or *in a proper manner*, the Henderson Bridge Company shall have the power to annul the contract, if it sees proper to do so ; whereupon the contract on part of said company shall become null and void, and the unpaid part

of the value of the work done shall be forfeited by the contractor to the Bridge Company, and said Bridge Company shall be at liberty to employ any other person or persons in place of said contractors to do or to complete the work herein mentioned.

"A suspension or annulment of the contract under these specifications shall not give the contractor any claim for damages against the Henderson Bridge Company."

It will be seen that the contract provides three distinct states in which the power of annulment might be exercised by appellant.

Neither party contends the first one existed. Nevertheless, we think it should be looked to in determining the general meaning of the contract in respect to the relative rights and duties of the parties in case of annulment.

The second condition obviously involves a right of the contractors to trial and decision by court and jury of the question of due compliance with, and performance of, the terms of the contract, for power of the company to alone decide it is utterly inconsistent with both the context and language used.

But absolute power to annul the contract and take possession of and complete the work whenever it *appeared* to its engineer, or he was satisfied, the work did not progress with sufficient speed or in a proper manner, was in unambiguous terms given to the company, to be exercised without question by, or, it seems to us, previous notice to, the contractors; for as the right to notice always implies the right to be present to contest or participate in something about to be

done, notice could not have availed appellees inasmuch as they had no power, even if heard at all, to either contest or appeal from the act of annulment.

Cases have been cited by counsel where it was held contractors were entitled to notice and opportunity to be present when the engineer is making estimates of work done, and also where he acted in the capacity of arbitrator of disputed matters between them and employers; but here the engineer acted as the agent and employe of the company, and neither his good faith in the representation he made to the company, nor the action based on it, can, in the absence of an allegation in the petition of fraud, be called in question by appellees; and though the contract may appear to be somewhat harsh as respects the power retained by the company by its own will to annul it, and thus inflict a forfeiture of unpaid part of the value of work done, yet as the terms are plain, and must be presumed to have been agreed to by the contractors with full knowledge of their import, there is no reason to regard it invalid, for such clauses are essential, and usually inserted in contracts for building railroads, bridges and other large structures, to secure faithful and skillful execution and prompt completion, and are always upheld, this court having heretofore sustained a contract containing a provision, identical with the one before us. (Elizabethtown & Paducah Railroad Company v. Geoghegan, 9 Bush, 56.)

But it is contended, as was pleaded, that having made and paid estimates for work done, with its permission, by appellee, after October 1, 1883, the time clause of the original contract was waived by appellant.

It is, however, argued for the other side that the third condition, in which the power to annul existed, does not relate to time merely, but as well to the manner the work was to be done, and hence the right was not lost or waived by failure of appellant to exercise it during the contract time.

The proper construction of the clause depends upon the meaning of the phrase "or in a proper manner," and the connection in which it should be used.

Obviously it, like the connecting phrase, "with sufficient speed," refers to and qualifies the verb "progress," and consequently the simple inquiry is whether it can be made to work where it is hitched, as it evidently is not needed elsewhere.

It seems to us to have been put where it is to give a better guaranty of completion of the work within the time fixed than was afforded without it, and thus to serve a purpose and have a meaning, for, to assure the completion of the masonry within the time fixed, less than two years, required methods adopted, and materials and appliances provided and kept on hand, suitable and sufficient for the great undertaking; and that such was the purpose and meaning of the language used, as interpreted by appellant, is shown by the letter of its engineer to appellees, of date the same as his communication to the president, in which he complains of them, not because the work had not actually progressed "with sufficient speed" during the winter months, but that they were not preparing in a proper manner to commence at the beginning of the working season, and finish the masonry during the year 1884.

It is clear that time was intended to be, and was, the essence of the third condition, and as appellant failed, within the contract period, to annul upon the ground it appeared to the engineer the work did not progress with sufficient speed or in a proper manner, but accepted and paid for work subsequently done under the contract by appellees, it must be regarded as having elected to waive the right which consequently was lost; for it is a settled rule that when a party has the right to elect to do a thing to the injury of another, his election, when once made, is final and conclusive, and he can not afterwards alter his determination. (Addison on Contracts, vol. 1, 406.)

The original contract having thus and to that extent become obsolete, it is necessary to ascertain in what respect it was modified by the special agreement of June, 1883.

There is some controversy as to the precise form of that special agreement. The material portion of it, as shown by the copy filed by appellees, is, in substance, as follows: That on account of certain changes in arrangement, plan, sizes of foundations and piers from what was contemplated by the contract of December 7, 1881, and in view of increased cost, a special agreement between the parties to said contract had become necessary, fixing upon the price to be paid for the work resulting from such change of plan; that said foundations and piers were to be constructed in accordance with the specifications contained in said contract of December 7, 1881, and attached thereto, and the general profile of modified plan, made part of the special agreement, and to be taken in lieu of

the one attached to the original contract, and then follows a special reference to description of and price to be paid for each pier.

It is, however, alleged in the answer of appellant that the special agreement as really drawn up and adopted by the parties, contained additional stipulations, in substance, that it was not to vitiate or annul the provisions or specifications of the original contract, except so far as it became a supplement; and that in consideration of the payments mentioned therein, appellees were, in a skillful and workman-like manner, and with all labor, machinery and materials sufficient and proper, to execute and complete the foundations for the piers according to the provisions of the original contract, and the general profile of modified plan.

It seems to us the provisions of the original contract and specifications attached to and forming part of it, even without the additional stipulations mentioned, remained in full force and unaffected by the special agreement, except as to the change in arrangement and plan of foundation and pier, and the increased price resulting therefrom. For it is expressly provided in the special agreement, according to the version of appellees, that the work was to be done in accordance with the original specifications in which were contained the clauses giving power to annul. Besides, not only did appellees continue to work under, and recognize as binding, the original contract, but the gist of this action is the alleged breach of it by appellant, and the principal questions raised by the pleadings are in regard to the proper construction of its various provisions.

Although the power of appellant to annul the contract at will, was, as before said, waived and lost by failure to exercise it within the time fixed, the right still existed to terminate it whenever appellees in fact failed or refused to progress with sufficient speed or in a proper manner to complete the work within a reasonable time, or within the time agreed on when the supplemental contract was made, if there was such agreement; for that waiver did not have the effect to impair any other right appellant had under the contract, fairly construed, nor to release appellees from the performance of any duty imposed upon them.

In our opinion appellant had the right to annul, even after termination of the original contract time, whenever appellees failed or refused either to comply with and perform any of the terms of the contract, or to progress with the work with the speed and in the manner just stated, provided the non-performance or delay was not caused by the fault of appellant contributing substantially to it.

One of the alleged causes of delay was the refusal of the engineer to permit the use of Bowling Green stone, except for certain portions of the work, and the question of profits also depends somewhat on whether the action of the engineer in regard thereto was proper.

The clause of the contract on the subject is as follows: "Bridge Masonry — This is to be of limestone, and of such quality as the engineer may approve, it being understood that should the engineer so direct, stone from the white stone quarry at Bowling Green * * shall be used."

Whatever doubt there might be about the meaning

of that clause is removed by another, which provides that no stone will be accepted unless proved, to the satisfaction of the engineer, that it will withstand, without injury, the influence of water, ice and weather. We think the lower court properly instructed the jury the contractors had no right to require the company to accept that stone, except for certain purposes specified in the instruction, but erred in giving the following: "The contractors had the right to have the whole work laid out for them, and to work on all parts of it at once, subject to the right of the engineer to direct the application of force to any portion of the work which, in his judgment, required it, to order the increase or diminution of force at any point he might indicate, and if the jury find that the contractors were denied that right after the making of the agreement of June, 1883, and that delays resulted from such denial, then such delays were not chargeable to the contractors, and not grounds of annulment."

The principal objection to that instruction is that it is contradictory, and, therefore, misleading, for it is hard to reconcile the right of the contractors to work on all parts at once, the denial of which was a wrong done them, with the right given by the contract to the engineer "to direct the application of force to any portion of the work which, in his judgment, required it, and to order the increase or diminution of force at any point he may direct."

The main question in this case is the true measure of damages in case, as found by the jury, appellees were illegally prevented by appellant from completing the work.

But we will first consider the following instruction given by the lower court: "If the Bridge Company had the right to annul the contract under the evidence in this case and the law as laid down in the foregoing instructions, then it has the right to retain the fifteen per cent. of the value of the work done, which was held back by it under the contract, but has no other claim for damages; and if the jury find that there was a lawful annulment, they will find for the plaintiffs eighty-five per cent. of the value of all work by the contractors from December 1, 1883, to February 14, 1884, that is to say, eighty-five per cent. of the unestimated work."

While, as already said, appellant had the right to annul the contract, even after the termination of the original contract time, for either of the causes mentioned, does it necessarily follow that it had a right to retain the fifteen per cent. ?

Although it was competent for the original contractors to agree for the fifteen per cent. to be retained by appellant in case of violation of the contract by them, still, considered as a forfeiture, the right to it must be clearly shown, and can not be implied and regarded as liquidated damages; there must be consideration for it.

In one clause of the contract appellant agreed to pay the original contractors one thousand five hundred dollars for each month the work might be completed before October 1, 1883, which, though it was unavailable, must be presumed to have been the consideration or inducement, in part at least, for the contractors to agree to the forfeiting clause, while McCulloch was

no party to that contract, and does not appear to have made an agreement, express or implied, to give up any part of his earnings. But, independent of these peculiar features of the case, we think the true rule is that when an employer has, in any way, waived his right to annul a building contract, his right to stipulated damages for either non-performance or delay by contractors, should be regarded as also waived, unless there is an express agreement to the contrary. Besides, as appellant was in default in making estimates and paying for work done after November 30, 1883, it had no right to either annul the contract for non-performance or claim the retained percentage. For its right to annul was given upon the condition and faith it would comply with the stipulations on its part; one of the most essential to the contractors being payment according to estimates for the work of each month by the fifteenth of the succeeding one. In our opinion, therefore, so much of the first, as well as fourth instruction, as directs the jury to find in favor of appellant, in any case, the fifteen per cent. of value of work done by appellees, is erroneous.

The case of Elizabethtown & Paducah Railroad Company v. Geoghegan (9 Bush, 56) is unlike this. There the contest was not between the contractor, but his creditor and the employer, and it was held the latter was entitled, as against the creditor, to the retained per cent., because he had not only abandoned and left the work, but made no claim to the money in contest.

Instruction five is as follows: "If the jury find that the defendant, without right, prevented the plaintiffs from completing said work contracted to be done by

them, the jury should find as the damages in favor of the plaintiffs, first, equal to what the contractor had at the time they were so stopped from said work fairly, prudently and in good faith expended upon said work, and in preparation therefor, after deducting therefrom the amounts of payments received by the contractors from the Bridge Company, and the value of the plant and materials applicable for said work and procured therefor, which the contractors had still on hand; and the jury may give interest thereon at the rate of six per cent. per annum from April 9, 1884; and, secondly, such an additional amount as, added to said first amount, would equal the profits, if any, which the contractors would have made had they been allowed to complete the said work, the said profits to be computed as the difference between the amount which the contractors were to have received for said work when completed and the amount which it would have cost the contractors to complete the same had they been allowed to complete it, making a reasonable deduction from such profits for the less time the contractors were engaged in the work, and for their release from the care, trouble, labor, risk and responsibility which would have attended a full execution of the contract by them.

"In determining the amount which would have been received by the contractor as the contract price for masonry, had they been permitted to complete the work, the jury shall determine whether, upon the evidence, there should be an addition to, or deduction from, the original contract prices for the masonry by reason of the change of plan approved by the Secretary of War in March, 1883, and should add to or deduct

from the original contract price for the masonry as they shall believe from the evidence the cost thereof was increased or diminished by such change of plan.''

All authorities agree that a person injured is entitled to recover, as compensation, such damages as are the natural and proximate consequence of the act complained of; but there is difficulty in applying the rule and adopting tests that will in each case assure justice to both parties.

It seems to us, however, clear the instruction just quoted is radically wrong for several reasons:

1. It makes the employer responsible for the mistakes, misfortunes and miscalculations of the contractors; for although all the expenditures may have been made fairly, prudently and in good faith, they may not have, in all respects, been judicious, beneficial to the company, or promotive of the character of work required by the contract to be done. The evidence shows expenses were incurred opening quarries that did not furnish suitable stone, procuring materials washed away by floods, and in other ways that proved abortive, for all which the company was made liable under that instruction.

2. Appellees were made practically sole judges of their own prudence, fairness and good faith in making expenditures, and, as a result of the error in overruling the motion to require them to specify the items of damages claimed, appellant was deprived of a fair opportunity to disprove the correctness of their statement of the amount of such expenditures, and for the first time made by them as witnesses during the trial; and it is demonstrable the jury accepted it as

true, and deducting therefrom the amount paid by appellant, returned a verdict for the balance.

3. It required the jury to go behind and disregard the estimates and payments made and accepted for work done at prices agreed on and fixed.

The case relied on to justify that instruction is United States v. Behan, 110 U. S. Reports, 338. There the appellee had, under a contract with an engineer officer, undertaken to do certain work, which was discontinued; whereupon he made out an account for the actual and reasonable expenditures in the prosecution of the work, together with his unavoidable losses or materials on hand at the time the work was stopped. But the circumstances of that case are essentially different from this. There nothing had been paid the contractor for work, materials or losses. It does not appear the contract provided for periodical estimates and payments, nor, in fact, what amount, if any, work had been done.

Here the contractors had been engaged more than two years, and five months longer than the original contract time. Much of their machinery had been used, and of course lessened in value, in doing work for which they had been paid, as also for materials used in the work.

It seems to us there can be no safer or more just rule for awarding damages than "according to the usual course of things from such breach of contract, or such as may reasonably be supposed to have been in contemplation of the parties at the time they made the contract, as the probable result of the trade." (Hadley v. Baxendale, 9 Exchequer, 341.)

It is provided in a clause, already quoted, of the original contract that, in case the company annulled the contract, and discontinued the work at any time, which it had the right to do by giving the contractors one month's notice, they were to be entitled to payment in full for all the materials delivered and work done at bridge site or elsewhere, and the company was to be obliged and entitled to take immediate charge of all the contractors' derrick tools and other working plant in use at the time on the work included in the contract, and pay for them at a fair valuation, based on their actual value at the time, to be ascertained and decided by arbitrators; and it seems a part of the plant and tools have already been so received and paid for.

When the parties to such a contract as this have themselves agreed upon a basis of settlement and payment for the injury sustained, neither has a right to complain if adopted by the court; and we, therefore, think the damages to appellees, resulting from the act of appellant, if found to have been illegal, should be regarded as consisting of—first, the value of such of their derrick tools and other plant as were in use at the time, not already paid for; second, the value of the materials then on hand, or delivered or ready for delivery subsequent to November 30, 1883; third, the reasonable value of unestimated work done after that date; fourth, the amount of fifteen per cent. earnings retained, the last two items to be paid for in any event; fifth, interest on the whole amount from April 9, 1884; sixth, whatever profits it may be shown could have been made, if appellees had been permitted to complete the work.

For the errors indicated, the judgment is reversed, and cause remanded for a new trial and further proceedings consistent with this opinion.

---

To a petition for rehearing, filed by counsel for appellant, CHIEF JUSTICE LEWIS delivered the following response of the court:

In contracts for constructing railroad bridges, upon the skillful and faithful execution of which the public safety and interest so much depends, the engineer in charge must of necessity have the power to reject any and all defective work and materials; and as, with a view both to the interest and necessities of contractors, and to securing accuracy and fairness, periodical measurements and estimates of the work as it progresses are usually provided for in the contracts, the contractors, after having accepted payments from time to time, according to such estimates, are bound thereby in the absence of allegation and proof of fraud, and there being no such allegation in this case, the estimates must be regarded as decisive of the value of work done up to November 30, 1884, when the last one of them was made.

Although the Bridge Company attempted to annul the contract February 14, 1884, yet, as the contractors continued in possession under it until April 9, 1884, we think the material and working plant must be regarded as in their possession, under their control, and, consequently, at their cost and risk until that time.

The only way, in our opinion, to determine the value of unestimated work done, or materials on hand, subsequent to November 30, 1883, is according, not to the

contract prices, but at the reasonable value thereof, having reference to the purpose and use for which they were designed.

Under that clause of the contract made by the parties basis of settlement in case of annulment on one month's notice, and which was, in the opinion of this court, held to be the correct criterion of recovery, the Bridge Company was obliged and entitled to take and pay the reasonable value of all the plant in use at the bridge site or elsewhere, and is yet answerable for the reasonable value of the whole thereof as of April 9, 1884, not already valued and paid for, or reserved by the contractors, and also for the value of all materials on hand at the bridge site or elsewhere as of the dates when, under the contract, they should have been measured and estimated.

The reservation of fifteen per cent. was agreed to by the contractors in consideration of the undertaking by the Bridge Company to make and pay for monthly estimates of work done and materials furnished; and as the waiver of the time clause of the contract amounted to a waiver of the right to forfeit absolutely the fifteen per cent. reserved, so the failure to make and pay for the monthly estimates subsequent to November 30, 1883, entitled the contractors to the fifteen per cent. previously reserved. The opinion is, therefore, so modified as, in fixing damages, interest on the amount of fifteen per cent. of earnings reserved should be given from November 30, 1883, and interest on value of work done and materials furnished from the respective dates on which, under the contract, estimates and payments therefor ought to have been made.