## McINTIRE *v.* BARNES et al.

1. The statute (Laws 1872, p. 147) gives, when its provisions are observed, . a lien to sub-contractors and persons furnishing materials and labor, for the value thereof, but not exceeding the amount due or to become due·to the principal contractor at the date of the notice to the owner of the lien claimed.

2. A contract for the erection of a building of "the best lumber," merely, must be construed to mean the best lumber of which buildings were ordinarily constructed at that place.

3. Where a building was to be completed within a given time, the value of the rental between that time and the time of actual completion may be recouped, unless by settlement, intended to be final, such damages were waived either expressly or by implication. · ·

4. Where the owner permits the contractor to continue work after the expiration of the time in which the work was to be completed, he waives the right to rescind the contract on that ground. But by consenting to the extension he does not thereby waive such damages as he may have sustained by reason of the delay.

5. Although an account rendered may not be conclusive, it is always admissible to be weighed by the court or jury as other evidence, and may be treated as final when made with full knowledge of all the circumstances.

*Appeal from District Court of El Paso County.*

Barnes and others, the appellees, filed their petition in the district court of El Paso county for a mechanics' lien, alleging that the petitioners contracted with Sybrant who, as the agent of McIntire, the appellant, was erecting a building, to furnish labor and materials therefor. The cause was heard on the petition, answer, replications and master's report, and the court entered its finding and decree in favor of the petitioners to the effect following :

" That McIntire was owner of lot 19, block 92, in Colorado Springs ; that he contracted with Sybrant for the erection of a building thereon and agreed to pay him therefor $3,100 ; that said building was erected in pursuance of said contract, and was accepted by McIntire upon completion ; that upon settlement on September 27, 1875, a balance was found due Sybrant of $646.62; that Barnes furnished material for building to amount of $530.27; that McGovney & Co. furnished lumber to amount of $636.09; that Millard did work and furnished materials amounting to $225.50. "

" Decree :—That McIntire pay lien claimants within 90 days from date $646.60 and interest from September 27, 1875, at 10 per cent per annum, amounting in all to $736.40, as follows :   To Barnes, $280.33 ; to McGovney & Capehart, $336.68; to Millard, $119.40, and interest on said sums at 10 per cent per annum from date until paid, and costs of suit; that upon default the sheriff sell lot 19 at public auction to the highest and best bidder for cash, at front door of county clerk's office, and to give notice as in case of sales under execution."

McIntire prayed and perfected an appeal to this court. Other facts are stated in the opinion.

Mr. Wm. Harrison, for appellant.

Mr. Wm. A. Wilkes and Mr. T. A. McMorris, for appellees.

THATCHER, C. J. The appellant and J. V. Sybrant, in the spring of 1875, entered into a contract wherein it was agreed that the said Sybrant should build a house, furnishing all the material according to certain plans and specifications, on a certain lot in the town of Colorado Springs, and would complete the same on or before June 15, 1875. The total consideration to be paid was $3,100, of which sum $300 were to be paid when the walls were completed; $300 on completion of building, and $2,500 in real estate, consisting of two lots, one of the value of $1,500, the other of the value of $1,000. The original agreement was lost. After the building was completed, upon application of McIntire, Sybrant furnished him with a certificate setting forth, substantially, the terms of the contract as he understood them. While the building was in progress of construction it is fairly inferable from the evidence, that in lieu of conveying to Sybrant the lot valued at $1,000, McIntire agreed to pay the like amount in money, to enable Sybrant to complete the building. Not only is the testimony of Sybrant to this effect, but McIntire's course in making cash payments, largely in excess of the amount due, if the terms of payment had not been subsequently altered, tends to corroborate Sybrant's statement, that the original contract was subsequently modified by parol, so far as to convert the $1,000 payment in real estate into a money payment.

The lien claimants are Gerrit S. Barnes, the firm of McGovney & Capehart and Albert S. Millard. Barnes furnished to Sybrant, the contractor, hardware and materials for use, and that were used in the construction of McIntire's building, of the value of $530.27. McGovney & Capehart furnished materials of the value of $636.09 which were used in the building, and Millard furnished materials which were used in the building of the value of $225.50. No dispute arises as to the amount due the several lien claimants from Sybrant, but the controversy presented by the pleadings and proofs relates to the validity of the several claims as liens on the building and premises of McIntire, under the

statute of this State, approved February 9, 1872, Session Laws 1872, p. 147.

The statute just cited, when its provisions are observed, gives a lien to the sub-contractor and persons furnishing labor and materials, for the value thereof, but not exceeding the amount due or to become due from the owner to the principal contractor at the date of the notice to the owner of the building, of the lien claimed. *Jensen et al.* v. *Brown*, 2 Col. 694. The lien of the sub-contractor and material-men is always in strict subordination to the terms of the original contract between the owner and his immediate contractor. Phillips on Mechanics' Liens, § 62. A material inquiry therefore is, what amount was due at, or became due after, the filing of the lien.

Appellant urges that the building was not finished as the contract of Sybrant. It is true that as he was making but slow progress in the construction of the building, McIntire directed Sybrant's foreman to complete the work more speedily so that it might be ready for occupancy by D. J. Martin, his prospective tenant. The building was completed by the foreman with the consent, and to a certain extent, under the direction of Sybrant. McIntire treated the contract as entire and as completed by Sybrant. In the account rendered by McIntire to Sybrant, the amount paid the foreman by McIntire was charged up to Sybrant. We do not think the court erred in finding that the building was completed by Sybrant. The account rendered demonstrates, that, as understood by the parties, Sybrant was accountable to McIntire for whatever amount was advanced to the foreman toward the completion of the building.

Although the contract called for the best lumber, it is not necessarily to be construed to mean lumber of rare or extraordinary quality. Within the reasonable intent of the contract, "the best lumber" means the best of the kind that is ordinarily used in the construction of like buildings. In view of the fact that the evidence discloses that there was none other than Colorado lumber in the Colorado Springs

market at the time, it is to be presumed that had it been the intention of the parties that clear Chicago lumber, or any other lumber to be transported from a distant market, should be used, the contract by apt words would have so declared. Had it been made to appear that Chicago lumber was ordinarily used in Colorado Springs in the construction of similar buildings, the question might be differently resolved. In the absence of such evidence the claim to recoup damages on the basis of the difference in value between Chicago lumber and Colorado lumber of the kind used in the building, is not well founded.

The testimony as to the character of the Colorado lumber used in the building is widely conflicting. If there was any departure from the terms of the contract in this respect, what damages, if any, were sustained, does not appear. In view of all the evidence, we think the court might have found, as it must, in fact, have found, that any claim for damages on that ground had been waived by the acts and conduct of the appellant.

A very different question relates to the appellant's claim to recoup, on the ground that the building was not completed within the agreed time. According to the terms of the contract, the building was to have been finished June 15, 1875; but McIntire, by permitting Sybrant to continue to work on his contract after the expiration of the time, waived his right to rescind the contract on that ground. But, by consenting to the extension, he did not *thereby* waive such damages as he may have sustained by reason of the delay. Waterman on Set-off, § 515; Sedgwick on Meas. of Dam., p. 215 (n); *Sinclair* v. *Tallmadge*, 35 Barb. 602; *Abbott* v. *Gatch*, 13 Md. 314.

The evidence shows that the appellant caused the building to be erected, not for his own use, but with the intention of renting it to others. If it should appear that the building could have been rented June 15th, had it then been completed, or at any time thereafter prior to September 1st, when it was finished, ordinarily, the owner would be

entitled to recoup the amount he might and could have received for its use, for such a period of time as it might and would have been used, had the building been completed within the contract time. *Wagner* v. *Corkhill,* 40 Barb. 175.

From the testimony of McIntire and Martin, it appears that had the building been completed in time, it would have been occupied by a tenant, two and half months before it was finally finished. The rental value for that period might be recouped, unless, by a subsequent settlement intended by the parties to be final, such damages were expressly, or by implication, waived.

About a month after the completion of the building, subcontractors and material-men having applied to McIntire for the amount they claimed to be due, he sought a settlement with Sybrant, so that he (McIntire) might be enabled to pay off the lien claimants *pro rata.* Sybrant testifies, that before the settlement was had, "McIntire claimed he wanted to know how much money was going to parties who had claims against the building." Accordingly, he rendered the following account to Sybrant:

"H. A. McIntire, real estate, loan and insurance agent, Colorado Springs, Colorado.

This statement of account between H. A. McIntire and J. V. Sybrant, made this 27th day of September, 1875, shows that the contract price of building erected on lot 19, block 92, Colorado Springs,

| | | |
|---|---|---|
| was..................................................$3,100 00 | | |
| There was paid June 10, 1875.......... $650 00 | | |
| There was paid July 6, 1875............1,450 00 | | |
| There was paid July 29, 1875. ........ 105 00 | | |
| On August 26, 1875, it being impossible | | |
| to get the building completed by the | | |
| contractor, another party was called | | |
| and completed it, to whom was paid, 248 38 | | |
| ————2,453 38 | | |
| Balance due contractor.................... $646 62" | | |

This account, on presentation to Sybrant, was approved and indorsed *correct* over his signature, except that he claimed that $150 were due him for extra work.

By this account it was agreed that (exclusive of extra work to the payment of which McIntire did not then bind himself), the balance then due contractor was $646.62.

With a full knowledge of all the circumstances attending the carrying out of the contract, this settlement is had. And although it is true that an account rendered is not necessarily conclusive, it is always admissible in evidence to be weighed by the court or jury as other evidence. That the court treated it in the light of a final settlement between the parties, made for the evident purpose of enabling McIntire to adjust the lien claims against the building, is apparent from the decree. Having in view the concomitant circumstances we cannot say that, all the testimony being considered, the finding of the court is unsupported by the weight of evidence. We will not disturb it. As no one who can be prejudiced complains of the disallowance by the court of the item for extra work, it need not be considered.

The decree of the court below is

*Affirmed.*