[Andrews, Allen & Moorefield v. Tucker.]

# Andrews, Allen & Moorefield *v.* Tucker.

## *Action of Assumpsit.*

1. *Contracts; executory contract may be altered or forfeiture waived.*—A written contract by its terms executory, as imposing the performance of duties other than the mere obligation of making payment, may, while the contract is executory in respect of any part of such duties, be altered, modified or rescinded, either in parol or by writing, and without any other consideration than that of mutual assent; and such change of the contract under such circumstances, may extend to the waiver of any right either party may have had under the contract as originally made.

2. *Same; same; waiver of forfeiture for the performance of labor.* Under a written contract by which the plaintiffs undertook to grade a railroad for defendants according to certain specifications and within a certain designated time, if, after the time specified therein for the completion of the work undertaken by the plaintiffs, the contract is acted upon and treated by the parties as being in force, there is an implied agreement on the part of the defendants not to treat the failure to complete the work within the time designated as a cause of forfeiture, which results in a waiver by the defendants of the right to declare the contract forfeited by such failure.

3. *Same; same; same.*—In such a case, if the defendant accepts the work done by the plaintiffs, while the performance of the special contract remains uncompleted, the plaintiff is entitled to recover upon a *quantum meruit;* and especially is this true, if at the time of the acceptance there is an express agreement between the parties to pay for the work done, and the plaintiffs are induced by reason of such agreement to desist from the completion of the work contracted for.

4. *Action to recover for work done under contract; admissibility of evidence.*—In an action to recover for work and labor done, under a contract wherein the plaintiffs agreed to do certain work for the defendants according to specifications and within a designated time, for the purpose of establishing a modification of the original contract and the waiver on the defendants' part of the failure by the plaintiffs to complete the work according to the contract, evidence tending

[Andrews, Allen & Moorefield v. Tucker.]

to show that the defendants orally agreed to the cessation of work by the plaint.fs and to pay them the balance due according to the original rates for the work they had performed, and that the payment was actually made under such agreement, is competent and admissible.

5. *Same; same.*—In such a case, where, by the written contract, weather was named as a contingency which might delay the completion of the work, and the defendants obligated themselves to furnish sewer piping for the work specified, the facts that during the time covered by the contract that there was a great deal of rainy weather, and that the defendants failed to furnish the sewer piping promptly, are relevant and admissible in evidence.

6. *Same; same.*—In such a case, where it is shown that the defendants were the original contractors with a railroad company, and that the contract sued on was made with the plaintiffs as sub-contractors, the contract between the defendants and said railroad company is irrelevant to any of the issues in the case, is immaterial as evidence and inadmissible; and likewise statements made between the defendants and said railroad company are inadmissible, since as to the plaintiffs, they were *res inter alios acta.*

7. *Same; competency of witness.*—In an action to recover for work done in grading a railroad, where there is an issue as to the plaintiffs having performed the work as stipulated in the contract, before a witness is competent to testify as to the value of the work that was required to bring the work performed by the plaintiffs up to the specifications in said contract, it must be shown that such witness had examined the grade or knew the facilities for raising it, or that he had knowledge of the costs or value of such work.

APPEAL from the Circuit Court of Chambers.

Tried before the Hon. N. D. DENSON.

This action was brought by the appellees, J. A. & L. C. Tucker, against M. A. Andrews, T. H. Allen and J. D. Moorefield, composing the firm of Andrews, Allen & Moorefield. The complaint, as originally filed, contained three counts. The first count was for $150 due for work and labor done for the defendant by the plaintiffs on October 15, 1896. The second count was on an account stated on October 15, 1896. The third count was for $150 due for work and labor done under a contract between plaintiffs and defendants. The demurrer of the defendants to the third count was sustained. To the

first and second counts of the complaint, the defendants pleaded the general issue and several special pleas. In the second plea the defendants set up that the sum sued for was for work and labor done under a contract made between the plaintiffs and the defendants, in writing. This contract was set out *in extenso* in the second plea and was in substance as follows: "The plaintiffs agreed, for a certain express consideration, to grade for the defendants the roadbed for the main and side tracks of the Lafayette Railway, as surveyed and located by J. L. Cowan, "commencing at a point above Oak Bowery, where Andrews, Allen & Moorefield left off grading, thence along said railway as surveyed to the terminal point, one mile from starting point, No. 508; thence to commence work at station No. 895, to grade four miles more or less according to the survey and profile of said Cowan and the specifications thereto attached at the rate of 8 cents per cubic yard of material moved, roadbed measurement." The grading was agreed to be done according to the specifications attached to the contract, and the plaintiffs agreed to finish and complete the grading as specified by the 1st day of March, 1896, "unless prevented by the weather." The defendants agreed "to deliver all sewer piping needed at any point along the line when they are to be used." It was stipulated in said contract that the defendants were to pay the plaintiffs at stated intervals 80 per cent. of the gross amount due for work done at the end of each of such intervals, and after the five miles agreed were completed according to the specifications, the 20 per cent. reserve being the balance due on said five miles of grading, should be paid to the plaintiffs. It was further stipulated: "Said work to be performed as directed by the engineer, and the amount due at any time to be determined by his estimates; and it is hereby stipulated and agreed between the parties to this contract that in the event the party of the second part fails to comply with the stipulations herein required of them in the grading of said roadbed of said railway, then the party of the first part [the defendants] may at its option revoke and annul this contract and take charge of said work and re-let the same to others; and the

.amount due the said party of the first part shall be for-
feited to said party of the first part." The specifications
for the grading, as prepared by the engineer, were at-
tached to the contract. Among other provisions con-
·tained in said specifications, was the following: "Be-
fore final estimate shall be made, the grading as speci-
fied must be thoroughly inspected by the engineer and
president of said Lafayette Railway Company, and ac-
·cepted by them." After setting out the contract and
specifications attached thereto, the second plea averred
that the work and labor done by the plaintiffs for the
defendants, and the only account existing between
them, was based upon said contract, and that before
the commencement of the present suit, the defendants
had fully paid plaintiffs 80 per cent. of the gross amount
of said contract as provided therein, and that plaintiffs
have failed and refused, to perform their part of the
contract in grading the five miles of said road, accord-
ing to the terms thereof and the specifications thereto
attached.

In the third plea, the defendants, after referring to
said contract and making it a part of said plea, averred
that the plaintiffs did not perform the work as con-
tracted for, as directed by the engineer, that they did
not lower the excavations and raise the embankments
required for the roadbed to the grade established by the
·engineer, nor did they construct the cuts as wide as the
specifications demanded, and that on account of said
failure, the defendants revoked and annulled the said
contract and took charge of the work, and that, there-
fore, the amount, if any, due the plaintiffs was forfeited
to the defendants under the terms of said contract.

In the fourth plea, the defendants set up that the
amount sued for in this action was not determined by
the engineer prior to. the commencement of the suit.

Plea numbered four and a half, after referring to and
making the contract sued on as set forth in the second
plea a part thereof, averred that the plaintiff did not fin-
ish and complete all of the grading as provided for in said
contract, and on account of said failure the defendants
revoked and annulled said contract, and re-let a part of
·the same work to others.

The fifth plea, after referring to the contract set out. in the second plea, averred that the grading specified in said contract and specifications had never been accepted by the engineer and president of the Lafayette Railway Company.

In the sixth plea the defendants set up payment of the claim sued on.

The plaintiffs took issue upon the pleas 1, 3, 4½ and 6. To the second plea, the plaintiffs filed a special replication, in which they averred that while it was true the plaintiffs did not complete the entire five miles of grading, they did complete about 3 miles or more of said grading, for which they received 80 per cent. of the gross amount due for said work, and were released by the defendants from the completion of the remainder of said grading, and that the defendants agreed at the time of so releasing them, to pay them the 20 per cent. reserve, as provided in said contract on the amount of work and labor already performed, which amounted to $202, of which amount the defendants have, since the time of said agreement, paid the plaintiffs the sum of $57.

To the fourth and fifth pleas the plaintiffs filed special replications, in which they set up that after completing about 3 miles of the grading contracted for, said contract between the plaintiffs and the defendants was terminated at the request of the defendants, and that at the termination of said contract, the defendants agreed to pay the plaintiffs the 20 per cent. reserve for work and labor already performed by them, without further compliance by the plaintiffs with the terms of said contract, which said reserve amounted to the sum of $202, and that the defendants have, since said agreement, paid on said sum $57, leaving a balance of $145,. with interest, due from defendants to plaintiffs. Issue was joined upon these replications.

Upon the trial of the cause, the plaintiffs introduced in evidence the contract which is set out in the second plea. The plaintiffs, as witnesses in their own behalf,. testified that the money sued for was due for work and labor done by them under said contract, and that said sum was the balance of the 20 per cent. reserved by the

defendants on the work done. That the defendants had paid 80 per cent. of the gross amount due; that at the time of paying the 80 per cent. there was a settlement between the plaintiffs and the defendants, in which a balance was struck, and it was agreed, after paying the 80 per cent. of the gross amount due, that the remaining 20 per cent. would be paid, and subsequently 3 oxen were delivered to the plaintiffs at the value of $50, as part payment of the amount due. That the plaintiffs did a little more than three miles of the grading provided for in the contract, but never completed the five miles of grading required therein. That the plaintiffs completed the work performed by them about March 20, 1896; that during the time within which the work was to be done, there was a good deal of rainy weather. It was further testified by the plaintiffs that about a mile of the grading was done after March 1, 1896; that the contract was not revoked, nor annulled on March 1st, and that nothing was said by defendants to the plaintiffs about revoking or annulling it at that time, and that the plaintiffs worked on without objection on the part of the defendants until March, 1896. It was then shown by the evidence for the plaintiffs that the payment made by the defendants of the 80 per cent. of the gross amount of the work done was made on or about March 20, 1896. The plaintiffs further testified as witnesses in their own behalf, that the defendants put another contractor on the work ahead of the plaintiffs, to do the work which the plaintiffs contracted to do; that upon the plaintiffs making objection to this, the defendants offered to release the plaintiffs from the contract, and that after the agreement to pay the 20 per cent. of reserve, the plaintiffs were released by the defendants. The plaintiffs also testified that at different times, members of the defendants' firm admitted an indebtedness to the plaintiffs and promised to pay the same, and that the three oxen valued at $50 were delivered by the defendants to the plaintiffs after March 20, 1896.

The defendants as witnesses in their own behalf testified that they had never released plaintiffs from the original contract offered in evidence, and had never released or excused them from completing the same, and

that they had never had any settlement with the plaintiffs for work and never agreed to pay them any amount therefor, except what they were entitled to under the original contract. That at least two miles of the work was left undone by the plaintiffs and that said work so left unfinished was completed by the Lafayette Railway Company, with which they, the defendants, had the contract. There was other evidence for the defendants tending to show that because the plaintiffs did not complete the work according to the contract, the defendants took charge of said work and re-let it to another contractor and revoked and annulled the contract with the plaintiffs. There was other evidence for the defendants tending to show that before using the roadbed graded by the plaintiffs, the railway company had to do some work on it, and fix it in several places.

Upon the examination of J. A. Tucker, as a witness for the plaintiffs, and after he had testified to a settlement with the defendants for 80 per cent. of the gross amount, he was asked by the plaintiffs: "If at the time of the settlement there was any agreement between plaintiffs and the defendants?" The defendants objected to this question, because it called for a conclusion of the witness and because it called for illegal and irrelevant evidence. The objection was overruled, and the defendants duly excepted. The witness then testified to a balance being struck at this settlement and an agreement on the part of the defendants to pay them the 20 per cent. reserve. Upon the further examination of this witness, and after having testified that the plaintiffs never completed the five miles stipulated for in the contract, he was asked the following question: "Was there anything that prevented you from completing the five miles by March 1st?" The witness answered that they were prevented by the rainy weather. To this answer the defendants objected, upon the ground that it was irrelevant and inadmissible evidence, and duly excepted to the court's overruling their objection. The witness was then asked by the plaintiffs the following question: "How much sewer pipe was to be used on the grading you did?" The defendants objected to this question, the court overruled their objection, and

they duly excepted. Upon the witness answering that there was a good deal of sewer piping, amounting to about 1,000 feet, he was then asked the following question: "Did the defendants furnish the sewer piping?" The defendants objected to this question, upon the ground that it called for immaterial and illegal evidence, and duly excepted to the court's overruling their objection. The witness answered that the sewer piping was not furnished at the time that it was needed. During the examination of this witness, he was asked the following question: "From the 1st of March on, was there any objection raised by the defendants to the work you say was done after the 1st of March?" The defendants objected to this question, because it called for illegal and irrelevant evidence, and duly excepted to the courts' overruling their objection. The witness answered that the defendants made no objection whatever.

After proving the execution of the written contract entered into between the defendants and the Lafayette Railway Company, for the grading of the portion of the roadbed of said company, which the defendants sublet to the plaintiffs, the defendants offered said contract in evidence. The plaintiffs objected to the introduction of said contract in evidence, the court sustained the objection, refused to allow the contract to be introduced, and the defendants duly excepted.

The defendants offered to prove by G. E. McGhee, the president of the Lafayette Railway Company, that on the settlement with the defendants on their contract with said railway company, that the witness, as president of said company, deducted from the amount to be paid to the defendants, the value of a deficiency of a number of cubic yards of earth which it was claimed the plaintiffs, as sub-contractors, had failed to move from a part of the road let to them by defendants. Plaintiffs objected to the making of such proof, the court sustained the objection, and the plaintiffs duly excepted. After the witness McGhee had testified that the defendants did not bring the work that they graded up to the stakes of the engineer, he was then asked the following question: "What was the value of the work that was required to bring the work up to the stakes of the engi-

neer on that part of the roadbed graded by the plaintiffs?" The court sustained the plaintiff's objection to this question, and the defendants duly excepted.

The court at the request of the plaintiffs gave to the jury the following written charges: (1.) "If the jury believe from all the evidence that defendants did not revoke the contract in evidence, but released plaintiffs from complete compliance with said contract, they should find against defendants on pleas Nos. 2 and 4½." (2.) "If the jury believe from all the evidence that defendants did not revoke the contract in evidence, but released the plaintiffs from a complete compliance with said contract and agreed to pay plaintiffs whatever was due for work and labor actually performed, and if the jury further believe from all the evidence that there is a balance due and unpaid for work and labor actually performed, they should find for the plaintiffs for said balance, with interest from the time it was due."

The defendants separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by them: (1.) "I charge you, gentlemen of the jury, that if you believe from the evidence that plaintiff did not finish and complete all the grading from starting point above Oak Bowery for one mile and from station No. 895 for four miles, more or less, by the first day of March, 1896, as required by their written contract, then you should find a verdict for the defendants." (2.) "If the jury believe from the evidence that the amount sued for in this case due under a contract between the plaintiffs and the defendants for the grading by the plaintiffs of a portion of the roadbed of the Lafayette Railway Company, that if they further believe from the evidence that the plaintiffs failed to fully perform and execute all that was required of the plaintiffs under said contract, then they must find for the defendants under the first plea of the defendants." (3.) "I charge you, gentlemen of the jury, that unless you believe from the evidence that the plaintiffs executed the contract which they made with the defendants, then you should find a verdict for the defendants." (4.) "Unless the jury find from the evidence that defendants

released the plaintiffs from the performance of the terms of the written contract in evidence between them they must find for the defendants." (5.) "The contract in evidence between the plaintiffs and defendants requires that all payments made thereunder shall be made on the estimate of the engineer, and if plaintiffs have failed to furnish such estimates, they are not entitled to recover on said contract." (6.) "The jury may look to the fact, if it be a fact, that defendants put other parties to work on that part of the railroad, which plaintiffs had contracted to grade, in determining whether or not defendants revoked and annulled their contract with plaintiffs." (7.) "Under the terms of the written contract offered in evidence between plaintiffs and defendants, the defendants had the legal right to place other parties at work on that part of the railroad which plaintiffs had contracted to grade after the first of March." (8.) "I charge you, gentlemen of the jury, that unless you believe from the evidence that the amount due the plaintiffs from the defendants was determined by the engineer prior to the commencement of this suit, then you should find a verdict for the defendants." (9.) "If the jury believe from the evidence that the work and labor performed by plaintiffs under the written contract in evidence has never been accepted by the president of the Lafayette Railway Company and the engineer, they can not find for plaintiffs on said contract." (10.) "Before the jury can find for the plaintiffs in this case they must believe from the evidence that the plaintiffs had executed and performed all that was required of them under the contract which they believe from the evidence was made by the plaintiffs with the defendants in this cause." (11.) "I charge you, gentlemen of the jury, that if you believe the evidence in the case, you will find a verdict for the defendants." (12.) "The burden of proof is upon plaintiffs to show that defendants released plaintiffs from their written contract, and if they have not shown this to the satisfaction of the jury they must find for defendants on their second plea."

There were verdict and judgment for the plaintiffs, fixing their recovery at $179. The defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

GEORGE P. HARRISON and ROBINSON & DUKE, for appellants.—"While it is true that an executory contract, that is one that has not been acted upon, may be discharged by the simple agreement of the parties that it shall no longer bind either of them, yet, this rule applies to the contract only so long as it remains executory; but when it has become executed wholly or in part by the passage of a consideration, it cannot be discharged by a simple agreement, but only by the performance of its terms, by a release under seal or by an accord and satisfaction."—3 Am. & Eng. Encyc. of Law, 890, § 56; *Foster v. Dawber*, 6 Ex. 839. "A liability evidenced by a written contract cannot be discharged by an executory parol agreement."—*Walker v. Green*, 22 Ala. 679.

"To work a rescission of the old contract the new one must be supported by some consideration and be otherwise valid and binding."—*Robson v. Collins*, 7 Ves. 130; s. c. 74 Am. Dec. 659; *Thurston v. Ludwig*, 6 Ohio St., 1.

A contract between a railroad and its contractor that the estimates of the company's engineer shall be final and conclusive, will be enforced, except in cases of fraud, or such gross mistakes as imply bad faith or a failure to exercise an honest judgment.—*Martinsburg & P. R. Co. v. March*, 114 U. S. 549; *Chicago, S. F. & C. R. R. Co. v. Price*, 47 Am. & En. R. R. Cases, 298; *Galveston, H. & S. A. R. Co. v. Henry*, 25 Am. & En. R. R. Cases, 266; *Summers v. Chicago, S. F. & C. R. Co.*, 49 Fed. Rep. 714. See also *Ross v. McArthur*, 52 Amer. & Eng. R. R. Cas.; *Cen. M. T. R. Co. v. Spurck*, 24 Ill. 587.

BARNES & DUKE, *contra*, cited 11 Encyc. Prac. 190; *Jordan v. Pickett*, 78 Ala. 331; 3 Brick. Dig. 110, §§ 52, 53; *Vandeventer v. Ford*, 60 Ala. 615; *A. G. S. R. R. Co. v. Hill*, 60 Ala. 615; *Calhoun v. Hannan*, 87 Ala. 277.

SHARPE, J.—By the law as it has been settled in this State, a written contract which by its terms is executory as imposing the performance of duties other than the mere obligation of making payment, may while the contract is executory in respect of any part of such duties, be altered, modified or rescinded with or without a writing and without any other consideration than

[Anderson, Allen & Moorefield v. Tucker.]

that of mutual assent.—*Badders v. Davis*, 88 Ala. 369; *Robinson v. Bullock*, 66 Ala. 548; 1 Brick Dig. 394, § 233. And such change under such circumstances may extend to the waiver of any right either party might have had under the original contract but for the new agreement.—*Cornish v. Suydam*, 99 Ala. 620. A waiver of a right to declare a contract forfeited may even be implied from conduct of the parties which is inconsistent with the intention to claim a forfeiture. Accordingly, the fact that the contract here involved was acted upon and treated by the parties as in force after the time specified therein for completion of the work undertaken by plaintiffs implied an agreement on the defendants' part not to treat the failure of completion within that time as a cause of forfeiture.—*Brigham v. Carlisle*, 78 Ala. 243; *Stewart v. Cross*, 66 Ala. 22.

· The right of an employer to repudiate all liability to pay for work done in an incomplete performance of a special contract may also be waived by his acceptance and use of the work whereby he receives a benefit. In such case the workman may recover upon the *quantum meruit.*—*Florence Gas, etc. Co. v. Hanby*, 101 Ala. 15; 1 Brick. Dig. 397, § 279. *A fortiori*, the liability exists when the acceptance is by an express agreement to pay for the services, which induces the employe to desist from completion of the work contracted for.—*Kirkland v. Oates*, 25 Ala. 465.

The application of these principles will dispose of most of the assignments of error.

To establish a modification of the original contract in respect to the length of roadbed to be graded and also a waiver on defendant's part of unfulfiled stipulations concerning work theretofore done, it was proper to admit evidence tending to show that defendants orally agreed to the cessation of work by the plaintiffs and to pay them the balance due according to the original rates for grading they had accomplished, and that a payment was actually made under such oral agreement.

By the written contract, weather was named as a contingency which might excuse promptness in completion, and defendants were bound to furnish sewer pipe for the work. Wet weather and their own fault if any in

failing to furnish pipe might well have induced a willingness on the defendants' part to waive delays occasioned by such causes and such facts were relevant as furnishing a reason for and a probability of such waiver.

The contract between the defendants as original contractors and the railroad company was immaterial as evidence. Only its specifications for construction were adopted into the agreement between the plaintiffs and defendants and those specifications were set out in full in this contract.

Settlements between the defendants and the railroad company were as to the plaintiffs *res inter alios acta.*

A witness after testifying that the defendants did not bring the grade up to the engineer's stakes was asked by defendants' counsel to state the value of the work that was required to bring the work up to those stakes. Whether in the absence of a plea of recoupment the evidence so called for was relevant we need not decide. Its rejection may be justified because it does not appear that the witness had examined the grade or knew of the facilities for raising it or that he had knowledge of the cost or value of such work.

There was no error in the giving or refusal of charges. Those given were in consonance with the principles we have stated. The refused charges numbered 1, 2, 3, 4, 9, 10 and 11, would have withdrawn from the jury the question of the defendants' liability upon the contract as modified, if there was a modification, or upon the *quantum meruit* by reason of acceptance of the work, if there was such acceptance, which questions the jury was in view of the evidence bound to consider.

The oral agreement, if made as the plaintiffs' evidence tends to show, was an estimation by the parties themselves of the amount to be paid, which dispensed with the stipulation in the original contract for furnishing estimates of the engineer referred to in charges 5 and 8. Charge 6 is argumentative. Charge 7 would have required the jury to take no account of the contract provision for delays by weather or of the evidence tending to show that the work was in fact delayed by rain.

The judgment will be affirmed.

DOWDELL, J., not sitting.