CASE 97.—ACTION BY THE MASON & HOGE CO. AGAINST
THE LOUISVILLE & NASHVILLE R. R. CO. FOR A
BALANCE DUE ON A CONTRACT FOR RAILROAD
WORK.—October 30.

# Louisville & N. R. R. Co. v. Mason & Hoge Co.

Appeal from Jefferson Circuit Court.

(C. P. Branch, 2 Div.) THOMAS R. GORDON, Judge.

From a judgment sustaining a demurrer to the answer defendant appeals—Reversed.

1. Damages—Breach of Contract—Waiver.—Under a contract for the construction of a railroad, providing that, if the contractors failed to complete the work within the time specified, then all the reserved percentage due them under the contract might be retained by the railroad company as liquidated damages, the railroad company, on failure to complete the work within the time specified, ipso facto, became entitled to the reserved percentage, and its right thereto was not waived by not then terminating the contract and by allowing the contractors to complete the same.

2. Same.—Though the railroad, on failure to complete the work within the time specified, had the right to retain the reserved percentage, yet it had no right to retain the stipulated percentage on work done after the time fixed for performance.

3. Contract—Breach—Right to Rescind—Waiver.—Where the construction of a railroad was not completed within the time specified in the contract, but the contractors continued the work, with the consent of the railroad company, the railroad thereby waived its right to rescind the contract, and was bound to pay for the work at the contract price, and the contractors were bound to complete the work within a reasonable time, failing in which they would be liable for actual damages thereby sustained.

HELM. & HELM, attorneys for appellant.

B. D. WARFIELD and H. L. STONE of counsel.

## POINTS AND AUTHORITIES.

A provision in a building contract that the employer may retain a certain per cent of the contract price as liquidated damages as compensation for injury, caused by breach of the contract, is enforceable. (Sedgwick on the Measure of Damages, side page 422; E. & P. R. Co., 9 Bush, 959; Kilburn v. Burt, 111 Ky., 694; Stephens v. Essex, 143 F. R., 844; Sun Printing Co. v. Moore, 183 U. S., 642.)

HUMPHREY & HUMPHREY and L. R. YEAMAN for appellee.

## POINTS AND AUTHORITIES.

The contract provided that the work should be completed by February 1, 1904, and gave appellant the two-fold right, in the event the work should not progress with a sufficient speed to insure its completion by the agreed date, to employ, at appellee's expense, any additional force necessary to secure its completion in time, or to annul the contract; and as appellant failed to avail itself of either of these powers, but, on the contrary, allowed appellee to continue on with the work after the date stipulated, and continued to make monthly estimates and payments until the work was finally completed, some fifteen months after the date originally fixed, appellant must be held to have waived the provision calling for completion by February 1, 1904, and, therefore, it also waived its right to liquidated damages for appellee's failure to complete the work by the date agreed upon. (Henderson Bridge Co. v .O'Connor & McCulloch, 88 Ky.; 303; 3 Page on Contracts, section 1502; 30 Am. & Eng. Ency. 2 Ed., p. 1259; Walker v. London & Northwestern Ry. Co., Law Rep., 1 Com. Pleas Div., 518; Grant v. Savannah Ry. Co., 51 Ga., 348; Rhorer on Railroads, vol. 1, p. 463; Phillips v. Seymour, 91 U. S., 651; Andrews v. Tucker, 127 Ala. 602, 29 Southern 34; McArthur Bros. v. Whitnye, 202 Ill. 527, 67 N. E. 163.)

Additional points and authorities by appellee, on petition for rehearing:

1. In the contract in Henderson Bridge Co. v. O'Connor, 88 Ky., 303, it was held that forfeiture of liquidated damages was contingent upon annulment. This court has held that in the contract in suit, forfeiture was "automatic" without annulment.

The court further decided that but for this distinction the two contracts would have been "substantially the same."

2. The language of this "automatic" provision for liquidated damages precludes the idea that the parties intended that appellant can recover liquidated damages and in addition actual damages.

3. The fundamental canon of construction is that courts will endeavor to give that meaning to a contract which was most likely in the minds of the parties themselves. Appellant and its counsel admitted that appellant has always understood the contract to mean that the liquidated damages should be in lieu of all actual damages.

4. This court has held, upon the supposed authority of Henderson Bridge Co. v. O'Connor, that after the expiration of the time limit appellant no longer had the right to annul the contract. But the doctrine in Henderson Bridge Co. v. O'Connor is exactly the reverse of this. That case held that the right to annul existed even after the expiration of the time limit; that this was the only remedy open to the bridge company, and hence that the bridge company could not counterclaim for actual damages sustained by reason of delay in completion.

5. The court's decision is directly at variance with the following rule, which is practically universal, viz.: Where a contract contains a provision for liquidated damages in case of breach, and the provision is construed to be not a penalty but a bona fide provision for liquidated damages, the provision stipulating the damages is binding upon the parties, and evidence aliunde as to the actual damage will not be admitted either to reduce or augment the amount of recovery. Prior to the decision in this case, that rule was the law of Kentucky. (Applegate v. Jacoby, 9 Dana, 206; Louisville Water Co. v. Youngstown Bridge Co. (Sup. Ct.), 16 Ky. Law Rep., 350; Woodbury v. Turner, etc., 96 Ky., 459; Kilbourne v. Burt & Brabb Lumber Co., 111 Ky., 693. And it is the law elsewhere. 19 Am. & Eng. Ency. of Law 2d Ed., p. 422; Sun Printing, etc., Association v. Moore, 183 U. S., 642; Stephens v. Essex County Park Com. ,143 Fed., 844; Donovan v. Hanauer (Utah), 90 Pac., 569; Kunkle v. Wherry, 139 Pa. St. 198, 42 Alt. 112; Smith v. Vail, 65 N. Y. Supp., 834; Wocd v. Niagara Falls Paper Co., 121 Fed., 818; Mondamin Meadows Dairy Co. v. Brudi, 163 Ind. 642, 72 N. E., 643; Woodford v. Kelley, 18 S. D. 615 101 N. W. 1069; Darrow v. Cornell, 52 N. Y. Supp., 1081; Morrison v. Richardson (Mass.), 80 N. E., 468; Go Fun v. Fidalgo Co., 37 Wash. 238, 79 Pac. 797; Jackson v. Hunt, 76 Vt. 284, 56 Atl. 1010; Brooks v. City of Wichita, 114 Fed., 297; Welch v. McDonald, 85 Va. 500, 8 S. E. 711; Morrison v. Ash-

burn (Tex. Civ. App.), 21 S. W., 993; Collier v. Betterton, 87 Tex. 440, 29 S. W. 467; Texas & St. L. Ry. Co. v. Rust, 19 Fed., 239; Miller v. Rankin (Pa. St.), 11 Atl., 615.)

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

On April 21, 1903, a written contract was entered into between the Louisville & Nashville Railroad Company and the Mason & Hoge Company, whereby the latter undertook to build for the former 15½ miles of railroad. The contract, among other things, contained these provisions: "And the said contractors agree to commence the said work within ten days from the date of this agreement, and to proceed with and complete the same to the satisfaction of the engineer by the first day of February, A. D. 1904. And it is further agreed that the time herein stipulated shall be considered as of the essence of this agreement. It is further agreed and understood, if at any time the contractors shall refuse or neglect to prosecute the work with a force sufficient, in the opinion of the engineer, for its completion within the time specified in this agreement, then, and in that case, the engineer in charge, or such other person as the engineer may designate, may proceed to employ such a number of workmen, laborers, and overseers as may, in the opinion of the said engineer, be necessary to insure the completion of the work within the time heretofore mentioned, at such wages as he may find it necessary or expedient to give, pay all persons so employed, and charge the amount so paid to the contractors, as for so much money paid to the contractors on this contract; or the said engineer may, at his discretion, for the failure to prosecute the work with an adequate force, for noncompliance

with his directions in regard to the manner of constructing it, or for any other omission or neglect of the requirements of this agreement and specifications on the part of the contractors, declare this contract abandoned which declaration of abandonment shall exonerate the Louisville & Nashville Railroad Company from any and all obligations and liabilities arising under this contract, the same as if this agreement had never been made; and the reserved percentage of ten per cent. upon any work done by the contractors may be retained forever by the said company.    And it is further agreed that if the said contractors fail to complete said work according to this contract, and the specifications, a part thereof, by the first day of February, 1904, as aforesaid, that then they will surrender to the Louisville & Nashville Railroad Company all of the retained percentage due them under this contract; and they hereby agree with the Louisville & Nashville Railroad Company that it may hold as its own the whole of said retained percentage as reasonable liquidated damages for the failure on the part of said contractors to complete said work by said first day of February, 1904, and it is hereby distinctly agreed by the parties that they do hereby fix the liquidated damages for the breach of this contract, as aforesaid, with respect to the time of the completion of the work at the amount of the whole of said retained percentage, whatever it may be on the first day of February, 1904.    On or about the first day of each month, during the progress of the work, the engineer shall make, or cause to be made, an estimate of the value of the work by the contractors, during the preceding month, according to the prices set forth in the schedule or list hereinbefore given, and on or about the 20th day of the

month 90 per cent. of such estimate shall be paid to
the contractors at the office of the railroad company,
in Louisville, Ky., in cash.  Monthly estimates shall
be considered as advances upon the final estimate,
and shall be deducted therefrom.  When all the work
embraced in this contract shall have been completed
agreeably to the specifications, and in accordance
with the directions and to the satisfaction and accept-
ance of the engineer, there shall be a final estimate
made of the quantity, classification and value of said
work agreeable to the prices set forth in said sched-
ule, the balance appearing due to the contractors shall
be paid to them when, and not until, the engineer
shall make his written final certificate that the work
had been fully and completely performed to his
satisfaction, and the railroad company shall only be
bound to pay the amount so certified to be due; and
upon making said payment they shall give a release,
under seal, to the railroad company from all claims
or demands whatsoever growing in any manner out
of this contract, and in computing the said final
estimate, and giving the said final certificate, the said
engineer shall not be bound by any preceding esti-
mate, but such preceding estimates shall be held to be
only approximate to the final estimate, and the said
monthly estimates on unfinished work shall in no case
be taken as an acceptance of the work or a release
of the said contractors from responsibility therefor,
until the final estimate and certificate are made, and
the work in its entirety is accepted by the engineer
as complete under this agreement.''

The Mason & Hoge Company did not begin the
work within the time named, and failed to complete
it until May, 1905.  At the time the contract was
made, it was understood that the Mason & Hoge Com-

pany would construct a tunnel included in the work, and that the firm of Dunn & Lallande Bros. would construct the remainder of the work. The railroad company did not insist upon its right to terminate the contract when the work was not completed by February 1, 1904, but allowed the contractors to continue the work as before. Dunn & Lallande Bros. completed the portion of the work assigned to them, which was all of the work except the construction of the tunnel, in October, 1904, and the railroad company then paid Dunn & Lallande Bros. the full amount of the final estimate for their part of the work. This payment was made under a written contract signed by all the parties, which stipulated as follows: ''That in any litigation that may arise under said contract the rights of the parties shall be determined as if said payment had not been made, except that the railroad company shall be entitled to credit for the full amount thereof.'' The railroad company continued to hold back 10 per cent. of the monthly estimates until the tunnel was completed in May, 1905, and it then claimed the right to hold the 10 per cent., which had been retained because the work was not done within the time specified in the contract. The Mason & Hoge Company thereupon filed this suit to recover from the railroad company the sum of $18,512.40. The railroad company filed an answer, to which the circuit court sustained a demurrer, and the railroad company appeals.

The judgment of the circuit court is based upon the ground that the railroad company, by not terminating the contract and allowing the contractors to complete the work, waived its right to retain the 10 per cent. reserved in the monthly estimates, and that having waived this it could not resort to any other remedy

to recover damages for the noncompletion of the work in time. In support of this view, we are referred to Henderson Bridge Co. v. O'Connor, 88 Ky. 303, 11 Ky. L. R. 146, 11 S. W. 18, 957; Phillips v. Seymour, 91 U. S. 646, 23 L. Ed. 341; Walker v. Railroad Co., 1. C. P. Div. 518; Grant v. Railroad Co., 51 Ga. 348; Andrews v. Tucker, 127 Ala. 602, 29 South. 34. In Henderson Bridge Co. v. O'Connor, the court said that, when an employer has in any way waived his right to annul a building contract, his right to stipulated damages for either noncompletion of the work or delay by the contractors is also waived, unless there is an express agreement to the contrary. But the contract in that case was materially different from the one before us here. In that case the contract provided, in substance, that, if the work in the judgment of the engineer did not progress with sufficient speed, the bridge company should have the power to annul the contract if it saw proper to do so. Whereupon the contract should become null and void, and the unpaid part of the value of the work done should be forfeited by the contractors to the bridge company. The only contingency in which the value of the work done was forfeited to the bridge company was upon its annulment of the contract on the ground stated. If it failed to annul the contract, the clause in regard to the forfeiting of the value of the work done necessarily did not apply. The contract before us provides that, if the contractors fail to prosecute the work with a sufficient force in the opinion of the engineer for its completion within the time specified in the agreement, then the railroad company may proceed to employ a sufficient force to complete the work within the time limited, or the engineer may at his discretion declare the contract abandoned. In this

event the reserve percentage of 10 per cent. upon any work done by the contractors may be retained by the company. This clause is substantially the same as the contract in Henderson Bridge Co. v. O'Connor; but the contract in this case has this further provision that, if the contractors fail to complete the work by February 1, 1904, then all the retained percentage due them under the contract shall be retained by the railroad company as liquidated damages for the breach of the contract. This clause then concludes with these words: "It is hereby distinctly agreed by the parties that they do hereby fix the liquidated damages for the breach of this contract as aforesaid, with respect to the time of the completion of the work at the amount of the whole of said retained percentage, whatever it may be on the first day of February, 1904." The contract before the court in Henderson Bridge Co. v. O'Connor contained no such clause as this, and therefore that case is not applicable here. The case of Phillips v. Seymour involved a contract which was similar to that before the court in Henderson Bridge Co. v. O'Connor, and which did not contain any clause similar to that above quoted from the contract in this case. In Walker v. Railroad Co. the contract was also similar to that in the case of Henderson Bridge Co. v. O'Connor, and it was there held that the railroad company, by allowing the contractors to continue with the work after the time fixed for the completion of the contract, waived its right to annul the contract and take possession of the work. This was the only question determined in the case. The contract in the case of Grant v. Railroad Co., 51 Ga. 348, was also of the same character. The plaintiffs had failed to avail themselves of the contract right to

terminate the contract. Andrews v. Tucker, 127 Ala. 602, 29 South. 34, is to the same effect.

In none of these cases was there a stipulation in the contract that, if the work was not completed within the time limited, the railroad company should ispo facto have the right to hold any retained percentage as liquidated damages for the breach of the contract. In the contract before us, the railroad company, without any action on its part, when the work was not completed by February 1, 1904, was entitled to retain the 10 per cent. in its hands as expressed in the contract, "whatever it may be on February 1, 1904." There was nothing in its conduct in allowing the contractors to go on with the work which waived its right to these liquidated damages. The right had become absolute. The money was in its hands, and by the terms of the contract it had the right to retain it. But while it had the right to retain the percentage in its hands whatever it was on February 1, 1904, it had no right to retain the 10 per cent. on work done thereafter. The contract gave it only the right to hold as its own the amount of the percentage retained and in its hands on February 1, 1904. Contracts of this sort for liquidated damages are limited to their terms. What then are the rights of the parties as to the work done after February 1, 1904? Could the contractors take their own time to do the work, regardless of the loss which might result to the railroad company? The railroad company, as held in the case above cited, had no right after February 1, 1904, to annul the contract and take possession of the work or to put additional hands upon it, for these provisions of the contract all manifestly refer to the work to be done before February 1, 1904, and were inserted to secure the completion of the

work by that time. When that time had passed, and the contractors continued the work with the consent of the railroad company, the latter company having waived its right to annul the contract, the law created an implied contract between them, by which the railroad company was bound to pay for the work at the contract price, and the contractors were bound to proceed with the work with reasonable diligence so as to complete it within a reasonable time. In Phillips v. Seymour, the United States Supreme Court said: "As we have stated above, we are inclined to the opinion that defendant did not, by any of the acts proved in this case, waive its right to damages arising from this failure of the plaintiffs to complete the sections in time, but only waived the forfeiture, if it may be so called, of all right on the part of plaintiffs to sue." In McIntire v. Barnes, 4 Colo. 285, where a similar question was presented, the court said: "According to the terms of the contract, the building was to have been finished June 15, 1875; but McIntire, by permitting Sybrant to work on his contract after the expiration of the time, waived his right to rescind the contract on that ground. But, by consenting to the extension, he did not thereby waive such damages as he may have sustained by reason of the delay." See, also, to same effect Sinclair v. Tallmadge, 35 Barb. (N. Y.) 602.

We conclude, therefore, that, under the allegations of the answer, the railroad company is entitled to keep the 10 per cent. which had been held back and was in its hands on February 1, 1904; and that if after February 1, 1904, the contractor failed to prosecute the work with reasonable diligence so as to complete it within a reasonable time, it is further liable to the railroad company for such actual damages as it

sustained by reason of the noncompletion of the work within a reasonable time after February 1, 1904. On the return of the case to the circuit court, the defendant will be allowed to amend its answer so as to plead the matters we have indicated, if it desires to do so.

Judgment reversed, and cause remanded for further proceedings consistent herewith.

Petition for rehearing by appellee overruled.