## No. 18,544.

ROYAL OIL AND GAS COMPANY *v.* BUICK DRILLING, INC.
(848 **P. [2d]** 148)

Decided January 4, 1960.

Mr. ROBERT SUNSHINE, Mr. H. D. REED, Mr. FRANK A. BRUNO, for plaintiff in error.

Messrs. IRELAND, IRELAND, STAPLETON & PRYOR, Mr. WILLIAM B. NAUGLE, Mr. EVART GARVIN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

THIS action was instituted by Buick Drilling, Inc., against Royal Oil & Gas Co. seeking the sum of $18,-125.00, the amount which Buick maintained was due as a result of oil drilling operations performed by it on behalf of Royal. Following a trial to the Court, findings, conclusions and judgment were entered for the plaintiff Buick, and Royal seeks reversal.

Two contracts enter into this controversy. The original of these was entered into on May 14, 1956, and provided:

"The Buick Drilling Inc. agrees * * * that it will, on or before May 16, 1956, commence moving its drilling rig to said lease and commence drilling operations and to continue with reasonable diligence in a good and workmanlike manner to drill a test well to the Granite which is expected to be encountered at approximately 3900' unless some impenetrable substance is encountered at a lesser depth."

The agreed sum for this drilling ($24,500.00) was delivered by Royal in escrow to be paid by the agent to Buick when "notified by the parties hereto that the terms of this contract have been fully performed." Royal also agreed to pay additional sums for the use of the drilling rig and in payment of third party services aside from the actual drilling of the well.

Buick commenced the drilling on May 23, 1956, but when it reached a depth of 3113 feet circulation was lost. Notwithstanding that the objective Granite sands were not reached, the drilling ceased by mutual agreement and a new "supplemental agreement" was entered into. It is the effect of this agreement which is here in question. The action by Buick seeks sums due under its terms upon the theory that to the extent of Buick's claims it superseded the original understanding. Royal, on the other hand, stresses its supplemental character and urges that Buick violated the conditions of the basic, original contract, and that as a result of this Royal is re-

lieved from liability and Buick has subjected itself to liability on its (Royal's) counterclaim.

In the so-called supplemental contract executed June 12, 1956, Royal is referred to as party of the first part. It declared:

" * * * it is agreed that said original contract shall be modified and changed in the particulars hereinafter set forth. Otherwise said original contract shall remain in full force and effect."

Its further pertinent provisions were:

"NOW THEREFORE as a compromise settlement of the dispute now existing between the parties, it is mutually understood and agreed that the [escrow agent] shall pay to the Buick Drilling, Inc. $24,500.00 now being held by said escrow agent. * * *

"It is further mutually understood and agreed that said $24,500.00 shall be received by the second party as full compensation under its said original contract for the *completion* of said well to the depth mentioned in said *original contract,* with the exception that the second party shall be entitled to additional compensation for services rendered over and above the said sum of $24,-500.00 for the items specified in the original agreement, and hereinafter listed which were mutually concurred upon in the settlement of the aforementioned dispute."

Ambiguities which had been present in the original contract were eliminated. Drilling was to be recommenced; Royal was to be liable at the rate of $4.00 per foot from 2188 to 3113 feet; in the event that surface pipe cemented in the hole should fail and thus impede drilling, the expenses incident to correcting this problem were to be paid by the parties on an equal basis. Royal received a credit of one-third of accumulated rig time. In the event that circulation was again lost, it was specified that: Royal was to

" * * * direct and assume responsibility for all efforts made in an attempt to recover circulation, and that the second party shall, to the best of its ability and in a good

workmanlike manner, comply with the instructions and directions of the first party in an effort to recover the lost circulation so long as it does not unnecessarily jeopardize the tools of the first [sic] party. In the event of lost circulation subsequently encountered, the first party shall be liable for rig time and all services and material and supplies required to combat such lost circulation in accordance with its directions."

It then concluded:

"It is further agreed that in addition to the said sum of $24,500.00 which will be paid to the second party under this supplemental agreement, that the first party shall be liable to the second party for all other services rendered by the second party to the first party to the completion of said well in accordance with the terms and provisions of said original contract, except such as are specifically mentioned in this supplemental agreement."

Following the execution of the supplemental agreement and the payment to Buick of the amount which had been held in escrow, drilling was again commenced. Buick reached the original depth of 3100 feet plus an additional 15 to 30 feet at which point circulation was again lost. Attempts were then made under the direction of Royal's geologist to regain circulation. These efforts were unsuccessful. Due to the hazard of loss of tools and damage to equipment and because of danger to the men, the well was by mutual consent abandoned.

■ Royal's contention that Buick violated the *original* agreement is based upon the failure of Buick to reach the "Granite" sands, and upon Royal's contention that Buick's performance was unworkmanlike. The trial court found that Royal entered into the "supplemental" agreement with full knowledge of all of the facts. Since the supplemental agreement was made so as to resolve the differences which existed between the parties as to responsibility for original loss of circulation, and in view of its specific provisions dealing with continuation of

drilling and payment, it follows that the alleged violations of the original agreement were waived and merged and that these issues were at the time of trial no longer germane.

The allegations of Royal's counterclaim are also predicated upon the alleged violations of the original contract and it thus follows that the trial court's denial of Royal's motion requesting leave to file on the day of trial was correct.

■ There is no dispute concerning the *amount* of Buick's claim, and there is little room for dispute as to its existence. Moreover, the conclusion of the trial court awarding judgment to Buick for $18,125.65 seems to us fully justified. In reaching this conclusion, we deem it unnecessary to resolve differences under the supplemental agreement, because following the abandonment of the well, and after Buick submitted its invoice in the above amount, Royal acknowledged the indebtedness in writing, and asked for time within which to pay. Royal also executed a promissory note and tendered it to Buick. There having been an unliquidated claim and a disputed amount, this acknowledgment of the obligation and approval of the amount was itself enforcible as an account stated or executory accord. *McIntire v. Barnes,* 4 Colo. 285; *Mace v. Spaulding,* 110 Colo. 58, 130 P. (2d) 89; *Corbin, Contracts,* Sec. 1312.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE FRANTZ concurring.